UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
CARL T. SEMENCIC,

                          Plaintiff,                          **COMPLAINT**

-against-                                          JURY TRIAL DEMANDED

THE COUNTY OF NASSAU;
THE NASSAU COUNTY POLICE DEPARTMENT;
COMMISSIONER PATRICK J. RYDER, individually
and officially; POLICE OFFICER ROBERT B.
McGRORY, individually and officially;
POLICE OFFICER KENNETH J. MAGNUSON,
individually and officially; JOHN DOE #1, individually
and officially; THE FRANKLIN SQUARE AND
MUNSON FIRE DEPARTMENT;
DANIEL MALONEY, individually;
ROBERT FINEO, individually; and
JOHN DOE #2, individually,

                          Defendants.
-----------------------------------------------------------------X

      The Plaintiff, **CARL T. SEMENCIC,** by and through his attorney, **BRIAN T.**

**STAPLETON, ESQ.**, as and for his complaint against the Defendants named herein,

alleges as follows:

## INTRODUCTION

      1.      This is an action for monetary, compensatory and punitive damages

brought pursuant to 42 USC §§ 1983 and 1988.  It seeks redress for deprivations by the

Defendants of the constitutional rights guaranteed to the Plaintiff by state and federal

laws, and also for the injuries and damages inflicted upon the Plaintiff by the Defendants'

tortious conduct.  The Defendants' unconstitutional, wrongful and actionable conduct

includes: (a) deprivations by the Defendants, acting under the color of law, of the rights,

privileges, and immunities guaranteed to the Plaintiff by the Fourth, Fifth, Sixth  and

Fourteenth Amendments to the United States Constitution; (b) deprivations by the Defendants, acting under the color of law, of the rights, privileges, and immunities guaranteed to the Plaintiff by Article I, Sections 8, 9, 11 and 12 of the New York State Constitution; and (c) false arrest, false imprisonment, illegal search and seizure, abuse of process, assault, battery, excessive use of force, failure to intervene, fabrication of evidence, malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence.

2.      Plaintiff alleges that co-defendants MALONEY, FINEO and DOE #2 falsely accused and maliciously prosecuted him, causing him physical injury, emotional distress, loss of his firearm permit, loss of his property, and economic damages.

3.      Plaintiff alleges that co-defendants  MAGNUSON, McGRORY and DOE #1 illegally searched him and his home, wrongfully confiscated his property, assaulted him, battered him, used unreasonable and excessive force upon him, falsely accused him, falsely arrested him, falsely imprisoned him, and maliciously prosecuted him, all in violation of his constitutional and civil rights, and thereby causing him physical injury, emotional distress, loss of his firearm permit, loss of his property, and economic damages.

4.      Co-defendants MAGNUSON, McGRORY and DOE #1 acted without probable cause, legal justification or any reason except an intent to deprive Plaintiff of his rights, and their conduct was tacitly authorized by co-defendants NASSAU COUNTY, NCPD and RYDER.

5.      Plaintiff alleges that co-defendants NASSAU COUNTY, the NCPD and RYDER were negligent in hiring, training, supervising and retaining MAGNUSON, McGRORY and DOE #1, thus leading to their illegal search of Plaintiff and his home, their wrongful confiscation of his property, their use of unjustified, excessive and unreasonable force on Plaintiff, their assault and battery of Plaintiff, their false arrest of the Plaintiff, their false imprisonment of the Plaintiff, and their malicious prosecution of Plaintiff.  Plaintiff alleges that the numerous misdeeds of the co-defendants as described herein were undertaken solely in an attempt to justify and avoid liability for their own flagrantly improper and unconstitutional conduct, and to wrongfully foist all liability for their misconduct upon Mr. Semencic.

6.      Plaintiff alleges that co-defendants NASSAU COUNTY, the NCPD and RYDER are liable for the assault of the Plaintiff, the battery of the Plaintiff, the use of excessive force on the Plaintiff, the illegal search of Plaintiff's property, the wrongful confiscation of the Plaintiff's property, the wrongful loss of the Plaintiff's firearm permit, the false arrest of the Plaintiff, the false imprisonment of the Plaintiff and the Plaintiff's malicious prosecution, because co-defendants NASSAU COUNTY, NCPD and RYDER have allowed NCPD officers to engage in long-standing  and widespread practices of abusing, falsely arresting and maliciously prosecuting the citizens of Nassau County. Further, co-defendants NASSAU COUNTY, NCPD and RYDER have failed to properly investigate these abuses and discipline the officers involved.  NASSAU COUNTY, the NCPD and RYDER have also been deliberately indifferent to the need to properly train NCPD officers, including McGRORY, MAGNUSON and DOE #1.   As a result, NCPD officers (including co-defendants MAGNUSON, McGRORY and DOE #1) have been

and continue to be encouraged by NASSAU COUNTY, the NCPD and RYDER to believe that they can violate the rights of ordinary citizens like the Plaintiff with impunity and without fear of retribution.   The repeated failure of NASSAU COUNTY, the NCPD and RYDER to properly train and discipline their officers (including co-defendants MAGNUSON, McGRORY and DOE #1), their longstanding tolerance of officer misconduct, and their indifference to protecting the rights of those victimized by NCPD officers are so deeply entrenched that they now constitute NASSAU COUNTY and NCPD policy.

7.     As a result of the Defendants' actions (or lack thereof), Plaintiff suffered physical pain and mental anguish, has incurred economic damages, has wrongfully been deprived of his physical property, has wrongfully lost his firearm permit, and has been forced to incur significant cost and expense.

## JURISDICTION AND VENUE

8.     The jurisdiction of the Court is invoked pursuant to 28 USC §§ 1331 and 1343(a)(3).  This Court also has supplemental jurisdiction over the state and local law claims made herein pursuant to 28 USC § 1367(a), because these claims are so closely related to the federal claims that they form part of the same case or controversy.

9.     Venue is proper in this district pursuant to 28 USC § 1391 because all of the material acts and injuries giving rise to this cause of action occurred within the Eastern District of New York.  In addition, venue is proper in this district pursuant to 28 USC § 1391 because Plaintiff resides in this district and, upon information and belief, the Defendants' residences and/or principal places of business lie within this judicial district.

## THE PARTIES

10.     Plaintiff **CARL T. SEMENCIC** is a citizen of the United States, and a resident of the State of New York, the City of West Hempstead and the County of Nassau.

11.     Co-defendant **THE COUNTY OF NASSAU** (hereinafter "NASSAU COUNTY") was and is a municipal corporation existing and operating by virtue of the laws of New York State.

12.     Co-defendant **NASSAU COUNTY POLICE DEPARTMENT** (at times hereinafter "the NCPD") is a municipal agency of Nassau County with business offices and precinct houses located throughout the same.

13.     Co-defendant **PATRICK J. RYDER** ("Ryder") is the Commissioner of the NCPD. Upon information and belief, co-defendant RYDER's residence and principal place of business are located in Nassau County. **RYDER** is being sued here in his official and individual capacities.

14.     Co-defendant **ROBERT B. McGRORY** ("McGrory") is a police officer employed by the NCPD.  Upon information and belief, McGrory's residence and principal place of business are located in Nassau County.  **McGRORY** is being sued here in his official and individual capacities.

15.     Co-defendant **KENNETH J. MAGNUSON** ("Magnuson") is a police officer employed by the NCPD.  Upon information and belief, Magnuson's residence and

5

principal place of business are located in Nassau County. **MAGNUSON** is being sued here in his official and individual capacities.

16.     Co-defendant **JOHN DOE #1** ("Doe #1") is an individual whose name and identity are currently unknown. Upon information and belief, DOE #1 is a police officer employed by the NCPD.  Upon information and belief, DOE #1's residence and principal place of business are located in Nassau County. **DOE #1** is being sued here in his official and individual capacities.

17.     Co-defendant **THE FRANKLIN SQUARE AND MUNSON FIRE DEPARTMENT** ("FSMFD") is a firefighting agency with engine companies located throughout Nassau County.

18.     Co-defendant **DANIEL MALONEY** ("Maloney") is a firefighter employed by the Franklin Square and Munson Fire Department.  Upon information and belief, Maloney's residence and principal place of business are located in Nassau County. **MALONEY** is being sued here in his individual capacity.

19.     Co-defendant **ROBERT FINEO** ("Fineo") is a firefighter employed by the Franklin Square and Munson Fire Department.  Upon information and belief, Fineo's residence and principal place of business are located in Nassau County.  **FINEO** is being sued here in his individual capacity.

20.     Co-defendant **JOHN DOE #2** ("Doe #2") is an individual whose name and identity are currently unknown. Upon information and belief, DOE #2 is employed by the Franklin Square and Munson Fire Department. Upon information and belief, DOE

#2's residence and principal place of business are located in Nassau County. **DOE #2** is being sued here in his individual capacity.

## BACKGROUND FACTS

21.     At all relevant times mentioned herein, co-defendants **NASSAU COUNTY, NCPD, RYDER, MAGNUSON, McGRORY** and **DOE #1** were acting under the color of law, *to wit:* under the color of the statutes, laws, rules, regulations, ordinances, usages, customs, practices, policies and procedures of the United States, New York State, Nassau County and the NCPD.

22.     At all relevant times, co-defendants **NASSAU COUNTY** and **NCPD** were in an employer-employee relationship with co-defendants **RYDER, McGRORY, MAGNUSON** and **DOE #1.**

23.     At all relevant times, the actions of co-defendants **RYDER, McGRORY, MAGNUSON** and **DOE #1** as described herein were undertaken pursuant to, and within the course and scope of, their employment with co-defendants **NASSAU COUNTY** and the **NCPD**.

24.     At all relevant times, the actions of **McGRORY, MAGNUSON** and **DOE #1** as described herein were undertaken with the consent of, knowledge of and tacit approval of co-defendants **NASSAU COUNTY, NCPD** and **RYDER**.

25.     At all relevant times, co-defendant **FSMFD** was in an employer-employee relationship with co-defendants **FINEO, MALONEY** and **DOE #2.**

26.     At all relevant times, the actions of co-defendants **FINEO, MALONEY, and DOE #2** as described herein were undertaken pursuant to, and within the course and scope of, their employment with the **FSMFD**.

27.     At all relevant times, the actions of **FINEO** and **MALONEY** as described herein were undertaken with the knowledge of and under the direction, supervision and control of the **FSMFD** and **DOE #2**.

28.     At all relevant times, the actions of co-defendants **FINEO**, **MALONEY** and **DOE #2** as described herein were undertaken in concert with those of co-defendants **McGRORY** and **MAGNUSON**.

29.     At all relevant times, the actions of co-defendants **FINEO**, **MALONEY** and **DOE #2** as described herein were undertaken with the consent of, knowledge of, and tacit approval of co-defendants **NASSAU COUNTY, NCPD** and **RYDER**.

30.     At all pertinent times co-defendant **RYDER** was the Commissioner of the NCPD.  As such, **RYDER** was the leader of, and the ultimate decision-maker for, the NCPD.  At all pertinent times **RYDER** had the authority to make and set policy binding upon co-defendants NASSAU COUNTY, McGRORY, MAGNUSON and DOE #1.  At all pertinent times **RYDER** had management and supervisory control and authority over all other NCPD members named as co-defendants in this complaint.

31.     At all pertinent times **McGRORY** answered directly to, and took orders from, co-defendants NASSAU COUNTY, NCPD and RYDER.

32.     At all pertinent times **MAGNUSON** answered directly to, and took orders from, co-defendants NASSAU COUNTY, NCPD and RYDER.

33.     At all pertinent times **DOE #1** answered directly to, and took orders from, co-defendants NASSAU COUNTY, NCPD and RYDER.

34.     At all pertinent times, **NASSAU COUNTY, the NCPD, RYDER, McGRORY, MAGNUSON** and **DOE #1** were charged with the following duties:

a.      to uphold, protect and obey the United States Constitution and the New York State Constitution;

b.      to uphold, protect and obey the laws of the United States and the State of New York;

c.      to protect and serve the citizens of Nassau County (including the Plaintiff);

d.      to uphold and protect the constitutional rights of Nassau County citizens (including the Plaintiff), and to prevent them from being victimized, harassed, threatened, injured, or subject to false criminal complaints and/or malicious criminal prosecutions;

e.      to ensure that all NCPD officers uphold, protect and obey the United States Constitution, the New York State Constitution, and the laws of the United States and the State of New York;

f.      to ensure that all NCPD officers protect and serve the citizens of Nassau County (including the Plaintiff);

g.      to prevent NCPD officers from violating the constitutional rights of Nassau County citizens (including the Plaintiff);

h.      to prevent NCPD officers from victimizing, harassing, threatening and/or injuring Nassau County citizens (including the Plaintiff);

i.      to prevent NCPD officers from falsely accusing Nassau County citizens (including the Plaintiff) of crimes they did not commit;

j.      to prevent NCPD officers from instigating and/or continuing false and malicious prosecutions of Nassau County citizens (including the Plaintiff);

k.      to individually refrain from victimizing, harassing, threatening and/or injuring Nassau County citizens (including the Plaintiff);

l.      to individually refrain from falsely accusing Nassau County citizens (including the Plaintiff) of crimes they did not commit; and

m.      to individually refrain from instigating and/or continuing false and malicious prosecutions of Nassau County citizens (including the Plaintiff).

35.     Upon information and belief, at all pertinent times co-defendant **DOE #2** was a "management level" firefighter employed by the Franklin Square and Munson Fire

9

Department. Upon information and belief, DOE #2 had supervisory authority and management control over co-defendants **FINEO** and **MALONEY**.

36.     At all pertinent times, **FINEO, MALONEY and DOE #2** were charged with the following duties:

a.     to uphold, protect and obey the United States Constitution and the New York State Constitution;

b.     to uphold, protect and obey the laws of the United States and the State of New York;

c.     to individually refrain from victimizing, harassing, threatening and/or injuring Nassau County citizens (including the Plaintiff);

d.     to individually refrain from falsely accusing Nassau County citizens (including the Plaintiff) of crimes they did not commit; and

e.     to individually refrain from instigating and/or continuing false and malicious prosecutions of Nassau County citizens (including the Plaintiff).

37.     At all pertinent times discussed herein the co-defendants **NASSAU COUNTY, NCPD, RYDER, McGRORY, MAGNUSON** and **DOE #1** were state actors.

38.     At all pertinent times discussed herein, co-defendants MAGNUSON, McGRORY, FINEO and MALONEY acted as the complaining witnesses against Mr. Semencic in the criminal proceedings described herein, and served as the sources of information for the Nassau County District Attorney's Office, supplying it with allegations against Mr. Semencic that they knew were misleading, false and untrue.

39.     Prior to July 19, 2016, Mr. Semencic applied for and was granted a Nassau County restricted carry handgun license (license no. HG246141989).  Prior to the events giving rise to this action, Mr. Semencic's handgun license had never been suspended or

revoked.  Mr. Semencic's handgun license was in full force and effect on the evening of July 19, 2016.

40.     Carl Semencic is an avid hunter and shooting sports enthusiast, and owns several handguns and long arms.  Many of the firearms owned by Mr. Semencic are vintage antiques of great financial and sentimental value.  All of these firearms were lawfully purchased years, if not decades, before July 19, 2016.

41.     All of the firearms that were wrongfully confiscated on the evening of July 19, 2016 were lawfully possessed by Mr. Semencic prior to and during the events of July 19, 2016.  Each and every one of the handguns owned by Mr. Semencic was properly listed on Mr. Semencic's handgun license.  For this reason, Mr. Semencic's possession of handguns within his home on the evening of July 19, 2016 was perfectly lawful.

42.     As a resident of Nassau County, Mr. Semencic is not required to have a license in order to own or possess a long arm.  For this reason, Mr. Semencic's possession of long arms within his home on the evening of July 19, 2016 was perfectly lawful.

43.     At all times prior to and during the events described herein, when these firearms were not being used or transported Mr. Semencic kept all of them safely secured inside his home.

<u>**FACTS GIVING RISE TO THE INSTANT COMPLAINT**</u>

44.     Plaintiff Carl Semencic resides in West Hempstead, New York.  Carl Semencic is a law-abiding citizen who has no criminal record.  But for the events described hereinafter, Carl Semencic had never been arrested in his life.

45.     Carl Semencic does not wish to be bothered by solicitors who come to his home.  For this reason Mr. Semencic posted a sign on his front storm door that clearly and conspicuously reads "DO NOT KNOCK. NO PEDDLERS."

46.     This clear and impossible-to-miss sign was intentionally and purposefully ignored by co-defendant MALONEY on the evening of Tuesday, July 19, 2016.  At approximately 8:00 PM on this work night, MALONEY loudly and repeatedly banged on Mr. Semencic's front door as part of his door-to-door soliciting campaign for the Franklin Square and Munson Fire Department.

47.     At the same time as MALONEY was disturbing Mr. Semencic in his home, co-defendant FINEO was nearby, also soliciting Mr. Semencic's neighbors on behalf of the FSMFD.

48.     At the time MALONEY began banging on Mr. Semencic's front door, Mr. Semencic had been working in his office and was wrapping up for the night.

49.     As he headed for his bedroom, Semencic took his unloaded Glock pistol from his office safe and was carrying it to his bedroom, where he was going to secure it in his nightstand for the night.

50.     It was as Semencic was walking from his office to his bedroom that Maloney loudly and repeatedly pounded on his front door.

51.     Mr. Semencic opened his front door to find Maloney, standing behind the closed storm door, dressed in his firefighter's uniform and seeking donations.

52.     At all times during this encounter with Maloney, Mr. Semencic's front storm door remained closed. At no time during this encounter with Maloney did Mr. Semencic open his front storm door or leave the inside of his home. At all times during this incident, Mr. Semencic and Maloney were separated by Semencic's closed front storm door.

53.     At all times during this encounter with Maloney, the gun Mr. Semencic was holding was unloaded: there was never a round loaded in the chamber of the pistol at any time.

54.     When he opened his front door, Mr. Semencic was holding his firearm in his left hand, with the barrel pointed down. Mr. Semencic is right-handed and shoots exclusively with his right hand. Mr. Semencic pointed at the sign on his front storm door with his left hand and, in a clearly annoyed voice, told Maloney "go away." He then abruptly and forcefully closed his front door.

55.     Mr. Semencic never pointed his firearm at Maloney, and never stepped outside his house at any time, prior to slamming the door in Maloney's face.

56.     Upon information and belief, after Mr. Semencic closed his front door, MALONEY became fearful that his actions would expose him to liability. He therefore enlisted the aide of co-defendants FINEO and DOE #2. Acting in concert, MALONEY, FINEO and DOE #2 concocted a narrative that was false, untrue, and was intended solely to wrongfully cover-up and avoid liability for their misconduct and to wrongfully foist all

liability for their own misdeeds upon Mr. Semencic. Further, MALONEY, FINEO and DOE #2 agreed to report this false narrative to the NCPD.

57.     Upon information and belief, the false and untrue narrative concocted by MALONEY, FINEO and DOE #2 was this: that Semencic had answered Maloney's knock in an angry fashion on the evening of July 19, 2016; that after answering his door Semencic then left the inside of his home and approached Maloney on his doorstep in a menacing fashion and with gun in hand; that Semencic then pointed his gun at Maloney and threatened Maloney with harm; and that Semencic's actions caused Maloney to flee the Semencic property in fear for his life.

58.     Upon information and belief, shortly thereafter MALONEY, FINEO and DOE #2 did, in fact, report this false and phony narrative to the Nassau County Police Department.

59.     Upon information and belief, MALONEY, FINEO and DOE #2 manufactured this false version of events knowing full well that it was untrue. At the time MALONEY, FINEO and DOE #2 reported this phony version of events to the police, they knew - or should have known - that by falsely reporting to the police that Mr. Semencic had pointed a gun at MALONEY and menaced MALONEY with it they (MALONEY, FINEO and DOE #2) would directly cause Mr. Semencic to be arrested and criminally prosecuted.  MALONEY, FINEO and DOE #2 also knew – or should have known - that by making a false report against Mr. Semencic of Menacing and Unlawful Firearm Use to the police, they (MALONEY, FINEO and DOE #2) would directly cause all of Mr. Semencic's firearms to be confiscated and would directly cause Mr. Semencic's handgun license to be suspended and revoked.

60.     Upon information and belief, after receiving the report made by MALONEY, FINEO and DOE #2, co-defendants MAGNUSON, McGRORY and DOE #1 responded to their location and interviewed MALONEY, FINEO and DOE #2 as to what had allegedly transpired.  Upon information and belief, MAGNUSON, McGRORY and DOE #1 knew – or should have known – that the version of events recited by MALONEY, FINEO and DOE #2 was false and untrue.  Nevertheless, MAGNUSON, McGRORY and other Nassau County Police officers then present (including DOE #1) proceeded to Mr. Semencic's home.

61.     After shutting his front door on Maloney, Mr. Semencic proceeded to his bedroom.  Once there, Mr. Semencic secured his unloaded firearm his nightstand.  He then proceeded to his den (located in the rear of his home) and started watching television with his wife.

62.     A short time later, Mr. Semencic's wife observed men, all dressed in plain clothes, peering through the den windows and watching them as they watched television.  Mr. Semencic now knows that these men were Nassau County police officers. Mr. Semencic went to the den window to see who was outside.

63.     Very soon thereafter, there came another series of extremely loud knocks on the front door.  Mr. Semencic went to the front door and, just as he was opening it, several men (now known to be Nassau County police officers), led by co-defendants MAGNUSON, McGRORY and DOE #1, forced their way through Mr. Semencic's front door and into his home, all without Mr. Semencic's consent.

64.     At no time during this process did Magnuson, McGrory or any other police officer obtain or possess a warrant authorizing them to enter Mr. Semencic's home, to place Mr. Semencic under arrest, or to search Mr. Semencic's premises.

65.     When Mr. Semencic opened his front door he was wearing only a t-shirt and shorts.  Mr. Semencic was unarmed, was behaving peacefully and was offering up no resistance.

66.     After forcing their way through Mr. Semencic's door, MAGNUSON, MCGRORY and the other police officers (including Doe #1) forced Mr. Semencic back into his kitchen and up against his kitchen counter, violently grabbed Mr. Semencic and turned him around, forced his hands behind his back and then roughly placed him in handcuffs.

67.     At no time during this entire process did any of the police officers present ask Mr. Semencic what had transpired between him and Maloney, nor did any police officer attempt to investigate Mr. Semencic's version of events prior to violently handcuffing him and then searching his home.

68.     As a direct and proximate result of the excessive force used by MAGNUSON, MCGRORY and the other police officers (including Doe #1) as described here, Mr. Semencic was caused to suffer physical injury to his wrists, hands, arms, and elbows.

69.     At some point during this incident, a crowd of neighbors and onlookers had gathered outside of Mr. Semencic's home.  After roughly handcuffing Mr. Semencic in his kitchen, MAGNUSON, McGRORY and DOE #1  removed Mr. Semencic from his home, in front of this crowd and in plain view of his neighbors and others, with his hands

cuffed behind his back and wearing only a t-shirt and shorts.  They then placed him in the back seat of a locked squad car that had its lights flashing.   This very public "perp walk" caused Mr. Semencic to experience intense embarrassment, humiliation, stress, anxiety, frustration and anger.

70.    After locking Mr. Semencic in the back of the car, the police officers then returned to the Semencic home and proceeded to search every room in the house.  Mr. Semencic soon learned they were looking for guns.  At no time during this entire process did Mr. Semencic give these police officers permission to enter his home, search it, or remove any property from it.

71.    While Mr. Semencic was still sitting in the back of the squad car, MAGNUSON, McGRORY and DOE #1 came back outside and demanded that Mr. Semencic give them the combinations to all of his gun safes. More specifically, MAGNUSON, McGRORY and DOE #1 threatened Mr. Semencic that if he did not give them all of the safe combinations, they (Magnuson, McGrory and Doe #1) would have all of the safe doors broken open. Not wanting his property to be destroyed, Mr. Semencic acquiesced.  Still in cuffs, and still in the back seat of the car, Semencic gave the police officers his safe combinations.

72.    MAGNUSON, McGRORY and DOE #1 then returned to searching Mr. Semencic's home, again leaving Semencic handcuffed in the back of the patrol car and in plain view of the crowd that had gathered there.

73.     Some time later, MAGNUSON, McGRORY and DOE #1 again returned to the squad car.  They informed Semencic that – even with the combination he had given them – they were unable to open the safe in the basement.  Again, they threatened

Semencic that if he did not open his basement safe for them then they would have its front door broken open.  Again, not wanting his property to be destroyed, Mr. Semencic acquiesced and agreed -  over objection - to open the basement safe himself.

74.     Mr. Semencic was then removed from the back seat of the squad car.  At this time his handcuffs were removed and Mr. Semencic was escorted by two police officers – all in plain view of the onlooking crowd – back into his own home.

75.     Once inside, Mr. Semencic was taken to his basement safe.  There, surrounded and crowded by approximately five or six police officers (including MAGNUSON, McGRORY and DOE #1), Mr. Semencic opened his basement safe.

76.     As soon as Mr. Semencic had cracked the safe door open, he was violently grabbed by the officers surrounding him and forcibly removed from the front of the safe. He was, again, forcefully and violently turned around and roughly placed in handcuffs. Once re-cuffed, Mr. Semencic was again taken out of his home in handcuffs and paraded in full view of the onlooking crowd into the back seat of the squad car with flashing lights.  Once again, this very public "perp walk" caused Mr. Semencic to experience intense embarrassment, humiliation, stress, anxiety, frustration and anger.

77.     Afterwards, MAGNUSON, MCGRORY and the other police officers (including DOE #1) removed all of Mr. Semencic's firearms from his safes.  Although the encounter with MALONEY involved a Glock pistol, MANGNUSON, MCGRORY and DOE #1 removed all of Mr. Semencic's firearms from his home (even those that had nothing to do with the Maloney encounter).

78.     At no time did Mr. Semencic give these police officers permission to remove his firearms from his safes.

18

79.     While MAGNUSON, MCGRORY and the other police officers (including DOE #1) were removing Mr. Semencic's handguns and long guns, and before they removed Mr. Semencic and his firearms from his home, Mr. Semencic told them that he had a valid Nassau County handgun license that authorized him to possess the handguns they were confiscating.  Mr. Semencic then showed them his handgun license.  Mr. Semencic also explained to them that he did not need a license to possess the long arms that they were confiscating.  MAGNUSON, MCGRORY and the other police officers (including DOE #1) ignored these facts and seized all of Mr. Semencic's firearms nonetheless.

80.     After all of his firearms were removed from his home, Mr. Semencic was taken to the Nassau County Police Department's Fifth Precinct and was held for a period of time.  Mr. Semencic was questioned while in custody, but without having been given any Miranda warnings.

81.     Eventually, Mr. Semencic was given a Desk Appearance Ticket ("DAT") that required his appearance in the Nassau County District Court, First Criminal Term, on August 11, 2016.  The DAT charged Mr. Semencic with Menacing in the Second Degree, in violation of New York Penal Law § 120.14(1).

82.     Upon information and belief, sometime after arresting Mr. Semencic and confiscating all of his firearms on July 19, 2016, but sometime before Mr. Semencic was due in criminal court on August 11, 2016 for his first appearance on the DAT, MAGNUSON,  McGRORY and the police officers present at Mr. Semencic's home on the evening of July 19, 2016 (including DOE #1) became fearful that their actions within Mr. Semencic's home on the evening of July 19, 2016 would expose them to liability.

For this reason, MAGNUSON, McGRORY and the other police officers (including Doe #1) conspired and agreed to concoct a version of events that was false and untrue, and to then report this fake narrative to the Nassau County District Attorney.

83.     Upon information and belief, the false narrative manufactured by MAGNUSON, McGRORY and the other police officers (including DOE #1) was intended solely to wrongfully cover-up their own misdeeds, to wrongfully avoid liability for them and to wrongfully foist all liability for their own misdeeds upon Mr. Semencic.

84.     The false and phony narrative concocted by MAGNUSON, McGRORY and the other police officers (including Doe #1) was this: that Semencic had answered Maloney's knock in an angry fashion on the evening of July 19, 2016; that Semencic then left the inside of his home and approached Maloney on his doorstep in a menacing fashion, gun in hand; that Semencic then pointed his gun at Maloney and threatened Maloney with harm; that Semencic's actions caused Maloney to flee the Semencic property in fear for his life; that when they (*i.e.,* MAGNUSON, McGRORY and the other police officers present at Mr. Semencic's on July 19, 2016) responded to the Semencic home, they were met by Mr. Semencic at the front door; that Mr. Semencic then stepped outside of his home to speak with the officers; that at the time Semencic stepped outside of his house, he (Semencic) was in a deeply agitated state; that while standing outside of his house, Semencic displayed such degrees of anger and agitation to the officers that they had to force Mr. Semencic to sit down on his front stoop in an effort to get him to calm down; that after Mr. Semencic calmed down he (Semencic) was handcuffed and placed under arrest (all while still outside of his home); that Semencic was cuffed and placed into the back seat of a radio marked patrol; that it was only after Mr. Semencic

had been placed into the back of the squad car that he (Mr. Semencic) *volunteered* to give all of his firearms to the officers then present; that while sitting in the back seat of the radio marked patrol Mr. Semencic, *voluntarily and of his own free will*,  agreed to open all of his vaults and surrender all of his firearms to the police; and that it was only after Mr. Semencic *freely and voluntarily* showed the police where all of his firearms were being stored that the firearms were removed from his home.  [emphasis added].  Shortly thereafter, McGRORY and MAGNUSON did, in fact, report this false and phony narrative to the Nassau County District Attorney.

85.     Upon information and belief, McGRORY, MAGNUSON and the other police officers (including DOE #1) manufactured this false version of events knowing full well that it was untrue. At the time McGRORY and MAGNUSON reported this phony version of events to the Nassau County District Attorney, they knew - or should have known - that by falsely reporting to the Nassau County District Attorney that Mr. Semencic had pointed a gun at MALONEY and menaced MALONEY with it, they would directly cause Mr. Semencic to be arrested and criminally prosecuted.  McGRORY and MAGNUSON also knew – or should have known - that by making a false report of Menacing and Unlawful Firearm Use against Mr. Semencic, they would directly cause Mr. Semencic's firearms to be confiscated and would directly cause Mr. Semencic's handgun license to be suspended and revoked.

86.     Upon information and belief, on or about July 19, 2016 MAGNUSON and McGRORY caused MALONEY and FINEO to file Supporting Depositions (*i.e.,* written statements made under oath) against Mr. Semencic with the Nassau County Police Department. These Supporting Depositions were untrue, and they detailed and supported

the false narratives concocted by MALONEY, FINEO, DOE #2, MAGNUSON, MCGRORY, DOE #1 and the other police officers.  At the time these Supporting Depositions were filed, MAGNUSON, McGRORY, MALONEY and FINEO knew that they were untrue.

87.    Upon information and belief, on or about July 20, 2016 MAGNUSON and McGRORY filed Misdemeanor Informations against Mr. Semencic with the Nassau County District Attorney and the Nassau County District Court.  These Misdemeanor Informations were untrue, and they detailed and supported the false narratives concocted by MALONEY, FINEO, DOE #2, MAGNUSON, MCGRORY, DOE #1 and the other police officers.  At the time these Misdemeanor Informations were filed against Mr. Semencic by MAGNUSON and McGRORY, MAGNUSON and McGRORY knew that they were untrue.

88.    As a direct and proximate result of the false reports and false filings made by MALONEY, FINEO, MAGNUSON and McGRORY, Mr. Semencic was formally charged by the Nassau County District Attorney, under Docket No. 2016NA020473, with the crimes of Menacing in the Second Degree (in violation of New York Penal Law § 120.14(1)) and Criminal Possession of a Weapon in the Fourth Degree (*i.e.,* possession of a dangerous weapon with intent to use the same unlawfully against another) (in violation of New York Penal Law § 265.01(2)). Both of these crimes are class "A" misdemeanors that carry a maximum penalty of up to one year in jail and/or a fine of up to one thousand dollars ($1,000).  Criminal Possession of Weapon in the Fourth Degree is defined by New York Penal Law § 265.00(17) as a "serious offense," conviction of which

automatically disqualifies the convict from possessing a firearm under New York Penal Law § 400.00(1).

89.     As a direct and proximate result of the false reports and false filings made by MALONEY, FINEO, MAGNUSON and McGRORY, and being actually innocent of the crimes for he was accused, Mr. Semencic was forced to defend himself in the Nassau County District Court.  This directly and proximately caused Mr. Semencic to expend significant amounts of time and money, as it required him to hire a criminal defense attorney, prepare a legal defense and make numerous appearances in Court.

90.     This process also exacted a significant emotional toll from the Plaintiff, causing him to experience intense fear, embarrassment, humiliation, stress, anxiety, frustration and anger for the duration of his prosecution and afterwards.

91.     Mr. Semencic's criminal prosecution lasted from August 11, 2016 until May 21, 2018.  During this time, Mr. Semencic made dozens of appearances in the Nassau County District Court with his criminal defense attorney. During the course of Mr. Semencic's defense, Mr. Semencic's criminal lawyer made several motions to dismiss the criminal charges against Mr. Semencic.  As a direct and proximate result of these efforts, Mr. Semencic incurred and paid legal defense fees in excess of forty thousand dollars ($40,000).

92.     Mr. Semencic's criminal prosecution was maliciously and needlessly prolonged by the intentional refusal of MALONEY, FINEO, MAGNUSON and McGRORY to co-operate with the Nassau County District Attorney's Office.

93.     Despite lacking probable cause and despite having actual knowledge of the Plaintiff's innocence, MALONEY, FINEO, MAGNUSON and McGRORY

wrongfully, intentionally and maliciously refused to notify the Nassau County District Attorney's Office that Mr. Semencic's arrest lacked probable cause, and that Mr. Semencic was actually innocent of their spurious charges.

94.     Despite lacking probable cause and having actual knowledge of the Plaintiff's innocence, MALONEY, FINEO, MAGNUSON and McGRORY wrongfully, intentionally and maliciously refused to withdraw the charges they'd falsely caused to be filed against Mr. Semencic.

95.     Instead, MALONEY, FINEO, MAGNUSON and McGRORY maliciously and intentionally caused Mr. Semencic's prosecution to be needlessly continued and prolonged.  They did this by repeatedly failing to co-operate with the prosecuting attorney's office when asked to do so, and by repeatedly failing to appear in court when required.  In so doing, MALONEY, FINEO, MAGNUSON and McGRORY knew that by failing to voluntarily have the charges withdrawn, while at the same time refusing to co-operate in Mr. Semencic's prosecution, they would needlessly extend Mr. Semencic's period of prosecution, thereby causing Mr. Semencic to incur significant additional financial expense and emotional trauma.

96.     On or about May 21, 2018 the criminal proceedings brought against Mr. Semencic in the Nassau County District Court were terminated in his favor, *to wit*: all criminal charges against Mr. Semencic were dismissed on the motions of Mr. Semencic's defense attorney.

97.     Shortly after his arrest on July 19, 2016, co-defendants MALONEY, FINEO, DOE #2, MAGNUSON, McGRORY and DOE #1 caused a report to be filed with the Nassau County Police Department Handgun License Division detailing the same

false narrative these same co-defendants had filed with the NCPD Nassau County District Attorney's Office.

98.     Co-defendants MALONEY, FINEO, DOE #1, MAGNUSON, McGRORY and DOE #1 caused this false report to be filed with the express and malicious intention of having Mr. Semencic's handgun license suspended and revoked.  Subsequent to the filing of this false report by these co-defendants, Mr. Semencic's handgun license was in fact revoked.

99.     Throughout the course of his criminal prosecution and afterwards, Mr. Semencic made repeated requests of the Nassau County Police Department for the return of all of his firearms.  As of this writing, the Nassau County Police Department has refused to return any of Mr. Semencic's firearms to him.

100.     Throughout the course of his criminal prosecution and afterwards, Mr. Semencic made repeated requests of the Nassau County Handgun Licensing agency for the reinstatement of his handgun license.  As of this writing, the Nassau County Handgun Licensing agency has refused to reinstate Mr. Semencic's Nassau County handgun license.

## DAMAGES

101.  As a direct and proximate result of the actions, omissions, failures,

breaches, usages, customs, practices, policies and procedures of the Defendants as

described herein, Plaintiff has been caused to suffer the following injuries and damages:

a.  Deprivation of his rights to freedom from unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 12 of the New York State Constitution;

b.  Deprivation of his right to substantive due process of law under the Fourteenth Amendment to the United States Constitution;

c.  Deprivation of his right to the Equal Protection of laws under the Fourteenth Amendment to the United States Constitution, as well as Article I, Section 11 of the New York State Constitution

d.  Physical injury;

e.  Physical pain and suffering;

f.  Limitations on the daily activities of living;

g.  Damage to his reputation;

h.  Emotional distress, trauma and suffering, including anger, fear, embarrassment, humiliation, sadness, frustration, extreme inconvenience, and anxiety;

i.  Loss of liberty;

j.  The revocation / suspension of his handgun permit;

k.  The confiscation of his personal property, including several valuable firearms;

l.  Expenditure of significant funds to cover necessary expenses, including attorney's fees, hospital and doctor's fees, and medical / pharmacy fees; and

m.  Economic losses.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### AGAINST CO-DEFENDANTS NASSAU COUNTY, NCPD, RYDER,
### McGRORY, MAGNUSON and DOE #1
### 42 USC § 1983
### ILLEGAL SEARCH AND SEIZURE

102.    Plaintiff hereby repeats and re-alleges each and every allegation contained in the paragraphs designated "1" through "101" with the same force and effect as if fully set forth herein.

103.    The right to freedom from illegal search and seizure of person and property is guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, as well as Article 1, Section 12 of the New York State Constitution. As a citizen of the United States  and the State of New York, Plaintiff is guaranteed freedom from unreasonable searches of his person, home and/or property by Government agents, as well as illegal seizures of his person and property. Deprivations of these freedoms are actionable under 42 USC § 1983.

104.    On or about July 19, 2016 (and as more fully described above in the paragraphs designated "44" through "100"), co-defendants MAGNUSON, McGRORY and DOE #1, acting in concert, under the color of law, within the course and scope of their employment with NASSAU COUNTY and the NCPD, and according to the long-standing usages, customs, policies, practices and procedures of co-defendants NASSAU COUNTY, the NCPD and RYDER, violated the Plaintiff's right to freedom from illegal search and seizure when they forced their way into the Plaintiff's home, entered it against the Plaintiff's will, confiscated all of Plaintiff's firearms and placed Plaintiff under arrest.

27

105.    There was no basis in law or fact for MAGNUSON, McGRORY and DOE #1 to search Plaintiff's home, confiscate Plaintiff's firearms or arrest Plaintiff for possessing the same on the evening of July 19, 2016.

106.    At no time did Plaintiff grant permission to MAGNUSON, McGRORY and DOE #1 to enter his home, search his premises, seize his property or seize his person on the evening of July 19, 2016.

107.    When they entered Plaintiff's home on the evening of July 19, 2016, MAGNUSON, McGRORY and DOE #1 did not possess a search warrant for the premises or an arrest warrant for the Plaintiff.

108.    When they entered Plaintiff's home on the evening of July 19, 2016, MAGNUSON, McGRORY and DOE #1 lacked probable cause to believe: that a crime had been, was being, or was about to be committed at that location; that they would find contraband or evidence of a crime inside the Plaintiff's house; and/or that any such contraband or crime evidence was being secreted or destroyed by the Plaintiff.

109.    When MAGNUSON, McGRORY and DOE #1 entered Plaintiff's home on the evening of July 19, 2016, there were no exigent circumstances at or near that location.  No one was in danger, or being threatened with danger, inside or around the Plaintiff's house.

110.    All of the firearms seized from within Plaintiff's home by MAGNUSON, McGRORY and DOE #1 had been legally purchased by Plaintiff prior to July 19, 2016.

111.    All of the firearms seized from within Plaintiff's home by MAGNUSON, McGRORY and DOE #1 were legally possessed by the Plaintiff on July 19, 2016.  On the evening of July 19, 2016, Plaintiff possessed a valid Nassau County Handgun

License. This license had never been suspended or revoked, was in full force and effect on July 19, 2016, and authorized Plaintiff to possess all of the handguns MAGNUSON, McGRORY and DOE #1 seized from within his home on that date.

112.   Under New York State law, a license is not required to own and possess a long arm within one's home or place of business.  As such, Plaintiff's possession of the long arms that MAGNUSON, McGRORY and DOE #1 seized from within his home on July 19, 2016 was perfectly lawful.

113.   When MAGNUSON, McGRORY and DOE #1 entered his home on July 19, 2016, Plaintiff showed them his handgun license, and explained to them that (for the same reasons detailed in the preceding paragraphs) he was legally entitled to possess all of the firearms at issue within his home.  MAGNUSON, McGRORY and DOE #1 intentionally and deliberately ignored these facts, and seized Plaintiff's firearms and person nevertheless.

114.   All of the firearms seized from within the Plaintiff's home by MAGNUSON, McGRORY and DOE #1 were being safely stored (*i.e.,* unloaded and locked within gun safes) at the time of their seizure.

115.   At all relevant times, the actions of MAGNUSON, McGRORY and DOE #1 as described herein were undertaken pursuant to, and within the course and scope of, their employment with NASSAU COUNTY, the NCPD and RYDER.

116.   At all relevant times, the wrongful actions of MAGNUSON, McGRORY and DOE #1 as described herein were undertaken with the knowledge of, and under the direction, supervision, and control of the co-defendants NASSAU COUNTY, RYDER, NCPD and RYDER.

117.    At all relevant times discussed herein the actions of co-defendants MAGNUSON, McGRORY and DOE #1 described herein were undertaken with the consent of, knowledge of, and tacit approval of co-defendants NASSAU COUNTY, NCPD and RYDER.

118.    At all relevant times discussed herein the actions of co-defendants MAGNUSON, McGRORY and DOE #1 described herein were undertaken pursuant to the long-standing customs, usages, practices, policies and procedures of the co-defendants NASSAU COUNTY, the NCPD and RYDER as more fully described elsewhere in this Complaint at the paragraphs designated as "6", "165" through "174," and "257" through "271."

119.    As a direct and proximate result of the actions of the co-defendants as described herein, Plaintiff has suffered and continues to suffer physical injury, emotional distress, the loss of his personal property, the loss of his handgun license and economic damages in excess of THREE MILLION DOLLARS ($3,000,000).

120.    At all times mentioned herein, MAGNUSON, McGRORY and DOE #1 acted wantonly, willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, Plaintiff is entitled to an award of punitive damages, plus reasonable attorney's fees, costs and disbursements.

**AS AND FOR A SECOND CAUSE OF ACTION**
**AGAINST CO-DEFENDANTS NASSAU COUNTY, NCPD, RYDER,**
**McGRORY, MAGNUSON and DOE #1**
**42 USC § 1983**
**USE OF EXCESSIVE FORCE**

121.    Plaintiff hereby repeats and re-alleges each and every allegation contained

in the paragraphs designated "1" through "120" with the same force and effect as if fully

set forth herein.

122.    The right to freedom from unreasonable search and seizure of both person

and property is guaranteed by the Fourth and Fourteenth Amendments to the United

States   Constitution, as well as Article 1, Section 12 of the New York State Constitution.

These provisions prohibit the unreasonable seizures of a person, and therefore the use of

excessive and unreasonable force by a police officer during an arrest.  As a citizen of the

United States and the State of New York, Plaintiff is guaranteed freedom from the use of

excessive, abusive and unreasonable physical force by any police officer who might

arrest him.  Deprivation of this freedom is actionable under 42 USC § 1983.

123.    On or about July 19, 2016 (and as more fully described in the paragraphs

designated "44" through "100"), co-defendants MAGNUSON, McGRORY and DOE #1,

acting in concert, under the color of law, within the course and scope of their

employment with NASSAU COUNTY and the NCPD, and according to the long-

standing customs, policies, practices and procedures of NASSAU COUNTY and the

NCPD, violated the Plaintiff's right to freedom from the use of excessive force when

they: violently and forcefully grabbed Mr. Semencic and turned him around in his

kitchen, threw him with great force against his kitchen counter, forced his hands behind

his back and then roughly placed him in handcuffs; and when they violently and

forcefully dragged him away from his basement safe and (in his basement) again forced his hands behind his back and again  roughly placed him in handcuffs.

124.    There was no basis in law or fact or fact for co-defendants MAGNUSON, McGRORY and DOE #1 to use the excessive and unreasonable degree of force described herein while arresting the Plaintiff.

125.    When MAGNUSON, McGRORY and DOE #1 seized the Plaintiff, Plaintiff was acting in a calm, rational and non-threatening manner.

126.    When MAGNUSON, McGRORY and DOE #1 seized the Plaintiff, Plaintiff was speaking in a calm, rational and non-threatening and manner.

127.    When MAGNUSON, McGRORY and DOE #1 seized the Plaintiff, Plaintiff was unarmed.

128.    When MAGNUSON, McGRORY and DOE #1 seized the Plaintiff, Plaintiff posed no threat of harm to himself or others.

129.    When MAGNUSON, McGRORY and DOE #1 seized the Plaintiff, Plaintiff was being co-operative, and was not attempting to flee from them.

130.    Despite these facts, MAGNUSON, McGRORY and DOE #1 unreasonably, wrongfully and intentionally used the excessive and abusive degree physical force described herein while arresting the Plaintiff.

131.    At all relevant times, the actions of MAGNUSON, McGRORY and DOE #1 as described herein were undertaken pursuant to, and within the course and scope of, their employment with NASSAU COUNTY, the NCPD and RYDER.

132.    At all relevant times, the wrongful actions of MAGNUSON, McGRORY and DOE #1 as described herein were undertaken with the knowledge of, and under the

32

direction, supervision, and control of the co-defendants NASSAU COUNTY, NCPD and RYDER.

133.    At all relevant times discussed herein the actions of co-defendants MAGNUSON, McGRORY and DOE #1 described herein were undertaken with the consent and tacit approval of co-defendants NASSAU COUNTY, NCPD and RYDER.

134.    At all relevant times discussed herein the actions of co-defendants MAGNUSON, McGRORY and DOE #1 described herein were undertaken pursuant to the long-standing customs, usages, practices, policies and procedures of the co-defendants NASSAU COUNTY, the NCPD and RYDER as more fully described elsewhere in this Complaint at the paragraphs designated as "6", "165" through "174," and "257" through "271."

135.    As a direct and proximate result of the actions of the co-defendants as described herein, Plaintiff has suffered and continues to suffer physical injury, emotional distress, the loss of his personal property, the loss of his handgun license and economic damages in excess of THREE MILLION DOLLARS ($3,000,000).

136.    At all times mentioned herein, MAGNUSON, McGRORY and DOE #1 acted wantonly, willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, Plaintiff is entitled to an award of punitive damages, plus reasonable attorney's fees, costs and disbursements.

**AS AND FOR A THIRD CAUSE OF ACTION**
**AGAINST CO-DEFENDANTS NASSAU COUNTY, NCPD, RYDER,**
**McGRORY, MAGNUSON and DOE #1**
**42 USC § 1983**
**EQUAL PROTECTION OF THE LAWS**

137.    Plaintiff hereby repeats and re-alleges each and every allegation contained in the paragraphs designated "1" through "136" with the same force and effect as if fully set forth herein.

138.    The right to equal protection of the law is guaranteed by the Fourteenth Amendment to the United States Constitution, as well as Article I, Section 11 of the New York State Constitution. As a citizen of the United States and the State of New York, Plaintiff is guaranteed the equal protection of the laws, and freedom from singular, illegal and prejudicial treatment at the hands of the Government.  Deprivation of these guarantees and freedoms is actionable under 42 USC § 1983.

139.    On July 19, 2016 and thereafter, Plaintiff was a law abiding citizen and licensed gun owner who had committed no crime.  As such, Plaintiff was similarly situated to all other such law abiding citizens and gun owners in that he:

a.    had the right to be free from warrantless and illegal searches and seizures;

b.    had the right to be free from the use of excessive force on his person by State actors;

c.    had the right to be free from being falsely imprisoned and arrested;

d.    had the right to be free from malicious prosecutions; and

e.    had the right to possess handguns and long guns in his home.

140.    As more fully described above in the paragraphs designated "44" through "100", on or about July 19, 2016 and continuing thereafter, co-defendants MAGNUSON, McGRORY and DOE #1, acting under the color of law, within the course and scope of

34

their employment with co-defendants NASSAU COUNTY, the NCPD and RYDER, and acting according to the long-standing customs, practices, policies and procedures of NASSAU COUNTY, the NCPD and RYDER, subjected the Plaintiff, or caused the Plaintiff to be subjected to, deprivations of his equal protection rights by:

      a.      subjecting him to an illegal search and seizure;

      b.      using excessive and unreasonable force upon his person;

      c.      wrongfully confiscating all of his firearms and refusing to return them;

      d.      unlawfully and falsely arresting and imprisoning him;

      e.      subjecting him to a false and malicious criminal prosecution;

      f.      wrongfully causing his handgun license to be revoked.

141.    The wrongful and intentional conduct of MAGNUSON, McGRORY and DOE #1 in singling out the Plaintiff for disparate and retaliatory treatment was undertaken in furtherance of an illicit and illegal vendetta aimed at covering up and avoiding liability for their own misdeeds, and deprived the Plaintiff of his right to equal protection of the laws in violation of the United States Constitution and the New York State Constitution.

142.    At all relevant times discussed herein the actions of co-defendants MAGNUSON, McGRORY and DOE #1 as described herein were undertaken with the consent of, knowledge of, and tacit approval of co-defendants NASSAU COUNTY, NCPD and RYDER.

143.    At all relevant times discussed herein the actions of co-defendants MAGNUSON, McGRORY and DOE #1 as described herein were undertaken pursuant to the long-standing customs, usages, practices, policies and procedures of the co-

defendants NASSAU COUNTY, the NCPD and RYDER as more fully described elsewhere in this Complaint at the paragraphs designated as "6", "165" through "174," and "257" through "271."

144.   As a direct and proximate result of the actions of the co-defendants as described herein, Plaintiff has suffered and continues to suffer physical injury, emotional distress, the loss of his personal property, the loss of his handgun license and economic damages in excess of THREE MILLION DOLLARS ($3,000,000).

145.   At all times mentioned herein, MAGNUSON, McGRORY and DOE #1 acted wantonly, willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, Plaintiff is entitled to an award of punitive damages, plus reasonable attorney's fees, costs and disbursements.

**AS AND FOR A FOURTH CAUSE OF ACTION
AGAINST CO-DEFENDANTS NASSAU COUNTY, NCPD, RYDER,
McGRORY, MAGNUSON and DOE #1
42 USC § 1983
FAILURE TO INTERVENE**

146.   Plaintiff hereby repeats and re-alleges each and every allegation contained in the paragraphs designated "1" through "145" with the same force and effect as if fully set forth herein.

147.   The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees against the deprivation of life, liberty or property without the due process of law.  At its core, the concept of substantive due process is intended to protect against the egregious, arbitrary, and conscience-shocking exercise of government power.  As a citizen of the United States and the State of New York, Plaintiff is entitled

to substantive due process.  Deprivations of Plaintiff's substantive due process rights are actionable under 42 USC § 1983.

148.    Co-defendants NASSAU COUNTY, the NCPD, RYDER, MAGNUSON, McGRORY and DOE #1 knew - or should have known - that the illegal search of the Plaintiff's home and person, the use of excessive force on the Plaintiff, the unlawful confiscation of the Plaintiff's property, the false arrest and imprisonment of the Plaintiff, the malicious prosecution of the Plaintiff, and causing the wrongful suspension and revocation of the Plaintiff's handgun license, violated the Plaintiff's substantive Due Process rights.

149.    Each of the co-defendants NASSAU COUNTY, the NCPD, RYDER, MAGNUSON, McGRORY and DOE #1 had the authority, ability and concurrent duty under 42 USC § 1983 to prevent the illegal search of the Plaintiff's home, the use of excessive force on the Plaintiff, the unlawful confiscation of the Plaintiff's property, the false arrest and imprisonment of the Plaintiff, the malicious prosecution of the Plaintiff, and the wrongful suspension and revocation of the Plaintiff's handgun license, yet they neglected and refused to prevent such violations from occurring.  Further, they failed to intervene and protect the Plaintiff by stopping these wrongful actions from continuing.

150.    Each of the co-defendants NASSAU COUNTY, the NCPD, RYDER, MAGNUSON, McGRORY and DOE #1 had, and continued to have, the power to prevent the continued malicious prosecution of the Plaintiff, yet they all failed to prevent the false and fabricated criminal charges from being filed against the Plaintiff.  Further, they have these phony and spurious withdrawn and dismissed, and they failed to protect

the Plaintiff from the potential penalties and fines these phony criminal charges
threatened.

151.    The failure of the co-defendants NASSAU COUNTY, the NCPD and
RYDER to investigate the false charges brought by co-defendants MALONEY, FINEO,
MAGNUSON and McGRORY and to intervene on Plaintiff's behalf as described herein,
and the refusal of co-defendants NASSAU COUNTY, the NCPD and RYDER to
discipline co-defendants MAGNUSON and McGRORY for their misconduct, constitutes
willful ignorance of the constitutional rights of the Plaintiff, and an intentional violation
of the duty of NASSAU COUNTY, the NCPD and RYDER to protect and uphold the
constitutional rights of the Plaintiff.

152.    As a direct and proximate result of the failure of the co-defendants to
intervene as described herein, Plaintiff has suffered and continues to suffer physical
injury, emotional distress, the loss of his personal property, the loss of his handgun
license and economic damages in excess of THREE MILLION DOLLARS ($3,000,000).

153.    At all times mentioned herein, NASSAU COUNTY, the NCPD, RYDER,
MAGNUSON, McGRORY and DOE #1 acted wantonly, willfully, maliciously and/or
with reckless disregard of the consequences of their actions. Accordingly, Plaintiff is
entitled to an award of punitive damages, plus reasonable attorney's fees, costs and
disbursements.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**AGAINST CO-DEFENDANTS NASSAU COUNTY, NCPD, RYDER,**
**McGRORY, MAGNUSON and DOE #1**
**42 USC § 1983**
**SUBSTANTIVE DUE PROCESS OF LAW**

154.    Plaintiff hereby repeats and re-alleges each and every allegation contained in the paragraphs designated "1" through "153" with the same force and effect as if fully set forth herein.

155.    The Due Process Clause of the Fourteenth Amendment to the United States  Constitution guarantees against the deprivation of life, liberty or property without the due process of law.  At its core, the concept of substantive due process is intended to protect against the egregious, arbitrary, and conscience-shocking exercise of government power.  As a citizen of the United States and the State of New York, Plaintiff is entitled to substantive due process.  Deprivations of Plaintiff's substantive due process rights are actionable under 42 USC § 1983.

156.    The Plaintiff has the constitutional rights: to due process of law; to freedom from illegal/unreasonable search and seizure; to freedom from the use of excessive force by any State actor who might attempt to arrest him; to possess a handgun within his own home; to freedom from unlawful arrest; to freedom from unlawful imprisonment; to freedom from false and malicious prosecution; and to the protections of the police.

157.    At all times as described more fully above in the paragraphs designated "44" through "100", the co-defendants MAGNUSON, McGRORY and DOE #1: were acting under the color of law; were acting within the course and scope of their employment with NASSAU COUNTY and the NCPD; were acting with the knowledge

of, and under the direction, supervision, and control of, the co-defendants NASSAU COUNTY, the NCPD and RYDER; were acting with the consent and tacit approval of the co-defendants NASSAU COUNTY, the NCPD and RYDER; and were acting according to the long-standing usages, customs, practices, policies and procedures of NASSAU COUNTY, the NCPD and RYDER.

158.    As described more fully above in the paragraphs designated "48" through "104", the co-defendants MAGNUSON, McGRORY and DOE #1 subjected the Plaintiff, or caused the Plaintiff to be subjected to, deprivations of his substantive due process rights by: illegally searching the Plaintiff's home; illegally confiscating the Plaintiff's property; using excessive and unreasonable force upon  the Plaintiff; falsely and unlawfully imprisoning the Plaintiff; maliciously prosecuting the Plaintiff; and illegally and wrongfully causing the Plaintiff's handgun license to be suspended and revoked.

159.    The conduct of the co-defendants as described herein was intentional and/or undertaken with deliberate indifference to the Plaintiff's constitutional rights.

160.    The conduct of the co-defendants as described above was repeated, extended, took place over a long period of time and was undertaken in the face of actions that presented an obvious risk of severe consequences and extreme danger to the Plaintiff.

161.    The conduct of the co-defendants as described above was so egregious and so outrageous that it can fairly be said to shock the contemporary conscience.

162.    As a direct and proximate result of the conduct of the co-defendants as described herein, Plaintiff has suffered and continues to suffer physical injury, emotional distress, the loss of his personal property, the loss of his handgun license and economic damages in excess of THREE MILLION DOLLARS ($3,000,000).

163.    At all times mentioned herein, the co-defendants acted wantonly, willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, Plaintiff is entitled to an award of punitive damages, plus reasonable attorney's fees, costs and disbursements.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**AGAINST CO-DEFENDANTS NASSAU COUNTY, NCPD and RYDER**
**42 USC § 1983**
**MUNICIPAL AND SUPERVISORY LIABILITY**

164.    Plaintiff hereby repeats and re-alleges each and every allegation contained in the paragraphs designated "1" through "163" with the same force and effect as if fully set forth herein.

165.    Prior to July 19, 2016 and since that time, the co-defendants NASSAU COUNTY, the NCPD and RYDER have permitted and tolerated a pattern and practice of unjustified, unreasonable and illegal uses of force; illegal searches and seizures; unlawful confiscations of property; commencements and continuations of false and malicious prosecutions; and other abuses of authority by police officers of the NASSAU COUNTY POLICE DEPARTMENT. Although such abuses by members of the NCPD were and are improper, the NCPD officers involved have never been seriously investigated, prosecuted, disciplined, or subjected to restraint by NASSAU COUNTY, the NCPD and/or RYDER, and such incidents were in fact covered up with official claims that the various abuses by members of the NCPD were justified and proper. As a result, NASSAU COUNTY police officers were caused and encouraged to believe by NASSAU COUNTY, the NCPD and RYDER that civilians could be abused by NCPD officers with impunity and without fear of retribution, and that such abuses would in fact be permitted by NASSAU COUNTY, the NCPD and RYDER.

166. In addition to permitting these patterns and practice of abuses by members of the NCPD, co-defendants NASSAU COUNTY, the NCDP and RYDER have failed to maintain a proper system of investigation of all incidents of abuses by NCPD officers.

167. Co-defendants NASSAU COUNTY, the NCDP and RYDER have failed to respond to the continuing and urgent need to investigate, restrain, and discipline NCPD officers who wrongfully perpetrate such abuses. In addition, co-defendants NASSAU COUNTY, the NCDP and RYDER have failed to find that civilian complaints made against NCPD officers are founded or valid in any way.

168. Co-defendants NASSAU COUNTY, the NCPD and RYDER have maintained a system of reviewing the abuses perpetrated by NCPD officers that has failed to identify abuses by NCPD officers and/or subject such NCPD officers to discipline, closer supervision, or restraint, to such an extent that it has become the custom, practice, policy and procedure of NASSAU COUNTY, the NCDP and RYDER to tolerate all such abuses by NCPD officers.

169. Further, co-defendants NASSAU COUNTY, the NCPD and RYDER (all of whom maintain either supervisory and/or decision-making positions over NCPD officers) have permitted a practice of improper investigation, supervision, discipline and retention of abusive NCPD officers.

170. Co-defendants NASSAU COUNTY, NCPD and RYDER have also refused and failed to prosecute abusive NCPD officers (including co-defendants MAGNUSON, McGRORY and DOE #1); have neglected, failed, and/or delayed to conduct any meaningful investigation of the circumstances surrounding the instant

matter; and have neglected, failed, and/or delayed to present the true and unlawful circumstances surrounding the Plaintiff's illegal search, illegal seizure, false arrest, false imprisonment and malicious prosecution to the Nassau County District Attorney's Office for appropriate handling.

171.    Upon information and belief, the specific and systemic flaws in the review process maintained by co-defendants NASSAU COUNTY, the NCPD and RYDER include, but are not limited to, the following:

a.    Preparing reports regarding investigations of NCPD officer abuses that portray officer abuses as routine, point-by-point justifications of police actions, regardless of whether such actions are justified;

b.    NCPD officers who investigate abuses by other NCPD officers systemically fail to credit testimony by non-NCPD officer witnesses, and uncritically rely on reports by NCPD officers involved in the subject incidents;

c.    NCPD officers who investigate abuses by other NCPD officers fail to include in their reports relevant factual information which would tend to contradict the statements of the NCPD officers involved;

d.    Supervisory NCPD officers at times issue public statements exonerating NCPD officers accused of perpetrating various abuses before the investigation of such abuses has been completed;

e.    Reports in brutality cases are not reviewed for accuracy by supervisory officers. Conclusions are frequently permitted to be drawn on the basis of clearly incorrect or contradictory information.

172.    The foregoing acts, omissions, systemic flaws, usages, customs, practices, policies and procedures of the co-defendants NASSAU COUNTY, the NCPD and RYDER have caused NCPD officers (including co-defendants MAGNUSON, McGRORY and DOE #1) to believe that all abuses perpetrated by them would not be aggressively, honestly and properly investigated.

173.     Therefore, co-defendants NASSAU COUNTY, the NCPD and RYDER are liable to the Plaintiff under 42 USC § 1983 because they  have had actual and/or constructive knowledge of the abuses perpetrated by NCPD officers upon innocent citizens in violation of the United States and New York State Constitutions, yet they have nevertheless maintained a meaningless procedure for reviewing complaints of misconduct and for investigating, disciplining and/or terminating the abusive NCPD officers involved.

174.     As a result, NCPD officers who perpetrate abuses upon otherwise innocent citizens (including co-defendants MAGNUSON, McRORY and DOE #1) have come to  rely upon the flawed practices, policies and procedures of NASSAU COUNTY, the NCPD and RYDER as shield behind which they can continue to abuse innocent citizens with impunity and without fear of retribution.

175.     As a direct and proximate result of the flawed practices, policies and procedures of the co-defendants NASSAU COUNTY, the NCPD and RYDER as described herein, the co-defendants MANGNUSON, McGRORY and DOE #1 perpetrated the abuses described elsewhere in this Complaint upon the Plaintiff.

176.     As a direct and proximate result of the flawed practices, policies and procedures of the co-defendants NASSAU COUNTY, the NCPD and RYDER as described herein, Plaintiff has suffered and continues to suffer physical injury, emotional distress, the loss of his personal property, the loss of his handgun license and economic damages in excess of THREE MILLION DOLLARS ($3,000,000).

177.     At all times mentioned herein, the co-defendants acted wantonly, willfully, maliciously and/or with reckless disregard of the consequences of their actions.

Accordingly, Plaintiff is entitled to an award of punitive damages, plus reasonable attorney's fees, costs and disbursements.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**AGAINST CO-DEFENDANTS NASSAU COUNTY, NCPD AND RYDER**
**42 USC § 1983**
***RESPONDEAT SUPERIOR***

178.    Plaintiff hereby repeats and re-alleges each and every allegation contained in the paragraphs designated "1" through "177" with the same force and effect as if fully set forth herein.

179.    At all relevant times, co-defendants NASSAU COUNTY, the NCPD and RYDER were in an employer-employee relationship with co-defendants MAGNUSON, McGRORY and DOE #1.

180.    At all relevant times, the actions of MAGNUSON, McGRORY and DOE #1 as described herein were undertaken pursuant to, and during the course of, their employment with the co-defendants NASSAU COUNTY, the NCPD and RYDER.

181.    At all relevant times, the actions of MAGNUSON, McGRORY and DOE #1 as described herein were taken under the direction, supervision and control of co-defendants NASSAU COUNTY, the NCPD and RYDER  and pursuant to the flawed customs, practices, policies and procedures promulgated and maintained by co-defendants NASSAU COUNTY, the NCPD and RYDER.

182.    As a direct and proximate result of the flawed practices, policies and procedures of the co-defendants NASSAU COUNTY, the NCPD and RYDER as described herein, Plaintiff has suffered and continues to suffer physical injury, emotional distress, the loss of his personal property, the loss of his handgun license and economic damages in excess of THREE MILLION DOLLARS ($3,000,000).

183. At all times mentioned herein, the co-defendants acted wantonly, willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, Plaintiff is entitled to an award of punitive damages, plus reasonable attorney's fees, costs and disbursements.

### AS AND FOR A EIGHTH CAUSE OF ACTION
### AGAINST CO-DEFENDANTS McGRORY, MAGNUSON and DOE #1
### ASSAULT
### (PENDENT STATE CLAIM)

184. Plaintiff hereby repeats and re-alleges each and every allegation contained in the paragraphs designated "1" through "183" with the same force and effect as if fully set forth herein.

185. On July 19, 2016 MAGNUSON, McGRORY and DOE #1 knowingly, intentionally and wrongfully threatened the Plaintiff with injury and attempted to batter him, *to wit*: they violently and forcefully grabbed Mr. Semencic and turned him around in his kitchen, they threw him with great force against his kitchen counter, they forced his hands behind his back and then roughly placed him in handcuffs in his kitchen; they violently and forcefully dragged him away from his basement safe; and (in his basement) again forced his hands behind his back and again roughly placed him in handcuffs.

186. At all times described herein, MAGNUSON, McGRORY and DOE #1 acted against the Plaintiff's will and without the Plaintiff's consent.

187. At all relevant times, the actions of MAGNUSON, McGRORY and DOE #1 as described herein were undertaken pursuant to, and within the course and scope of, their employment with NASSAU COUNTY, the NCPD and RYDER.

188. At all relevant times, the wrongful actions of MAGNUSON, McGRORY and DOE #1 as described herein were undertaken with the knowledge of, and under the

direction, supervision, and control of the co-defendants NASSAU COUNTY, NCPD and RYDER.

189.    At all relevant times discussed herein the actions of co-defendants MAGNUSON, McGRORY and DOE #1 described herein were undertaken with the consent and tacit approval of co-defendants NASSAU COUNTY, NCPD and RYDER.

190.    At all relevant times discussed herein the actions of co-defendants MAGNUSON, McGRORY and DOE #1 described herein were undertaken pursuant to the long-standing customs, usages, practices, policies and procedures of the co-defendants NASSAU COUNTY, the NCPD and RYDER as more fully described elsewhere in this Complaint at the paragraphs designated as "6", "165" through "174," and "257" through "271."

191.    As a direct and proximate result of the wrongful and intentional acts of MAGNUSON, McGRORY and DOE #1, the Plaintiff was placed in imminent fear of receiving harmful contact from MAGNUSON, McGRORY and DOE #1.

192.    As a direct and proximate result of the unlawful actions of MAGNUSON, McGRORY and DOE #1 as described herein, Plaintiff has suffered and continues to suffer physical injury, emotional distress, the loss of his personal property, the loss of his handgun license and economic damages in excess of THREE MILLION DOLLARS ($3,000,000).

193.    At all times mentioned herein, the co-defendants acted wantonly, willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, Plaintiff is entitled to an award of punitive damages, plus reasonable attorney's fees, costs and disbursements.

## AS AND FOR A NINTH CAUSE OF ACTION
## AGAINST CO-DEFENDANTS McGRORY, MAGNUSON and DOE #1
## BATTERY
## (PENDENT STATE CLAIM)

194.     Plaintiff hereby repeats and re-alleges each and every allegation contained in the paragraphs designated "1" through "193" with the same force and effect as if fully set forth herein.

195.     On July 19, 2016 co-defendants MAGNUSON, McGRORY and DOE #1 knowingly, intentionally and wrongfully came into harmful and offensive physical contact with the Plaintiff, *to wit*: they violently and forcefully grabbed Mr. Semencic and turned him around in his kitchen, they threw him with great force against his kitchen counter, they forced his hands behind his back and then roughly placed him in handcuffs in his kitchen; they violently and forcefully dragged him away from his basement safe; and (in his basement) again forced his hands behind his back and again  roughly placed him in handcuffs.

196.     At all relevant times, the actions of MAGNUSON, McGRORY and DOE #1 as described herein were undertaken pursuant to, and within the course and scope of, their employment with NASSAU COUNTY, the NCPD and RYDER.

197.     At all relevant times, the wrongful actions of MAGNUSON, McGRORY and DOE #1 as described herein were undertaken with the knowledge of, and under the direction, supervision, and control of the co-defendants NASSAU COUNTY, the NCPD and RYDER.

198.     At all relevant times discussed herein the wrongful actions of co-defendants MAGNUSON, McGRORY and DOE #1 described herein were undertaken

with the consent and tacit approval of co-defendants NASSAU COUNTY, the NCPD and
RYDER.

199.    At all relevant times discussed herein the actions of co-defendants
MAGNUSON, McGRORY and DOE #1 described herein were undertaken pursuant to
the long-standing customs, usages, practices, policies and procedures of the co-
defendants NASSAU COUNTY, the NCPD and RYDER as more fully described
elsewhere in this Complaint at the paragraphs designated as "6", "165" through "174,"
and "257" through "271."

200.    As a direct and proximate result of the unlawful actions of MAGNUSON,
McGRORY and DOE #1 as described herein, Plaintiff has suffered and continues to
suffer physical injury, emotional distress, the loss of his personal property, the loss of his
handgun license and economic damages in excess of THREE MILLION DOLLARS
($3,000,000).

201.    At all times mentioned herein, the co-defendants acted wantonly, willfully,
maliciously and/or with reckless disregard of the consequences of their actions.
Accordingly, Plaintiff is entitled to an award of punitive damages, plus reasonable
attorney's fees, costs and disbursements.

## AS AND FOR A TENTH CAUSE OF ACTION
### AGAINST CO-DEFENDANTS McGRORY, MAGNUSON and DOE #1
### FALSE ARREST AND FALSE IMPRISONMENT
### (PENDENT STATE CLAIM)

202.    Plaintiff hereby repeats and re-alleges each and every allegation contained in the paragraphs designated "1" through "201" with the same force and effect as if fully set forth herein.

203.    On July 19, 2016, and as more fully described in the paragraphs designated "44" through "100", co-defendants MAGNUSON, McGRORY and DOE #1 wrongfully, intentionally and maliciously confined the Plaintiff, *to wit:* they placed the Plaintiff in handcuffs, they put him in the back seat of their locked squad car, they transported him in a locked squad car to the NCPD Fifth Precicnt House and, once there, confined him in a locked cell until he was given a DAT.

204.    At all pertinent times the Plaintiff's confinement was involuntary and was effectuated against the Plaintiff's will.

205.    At all pertinent times Plaintiff was not merely conscious of his confinement, but he was acutely aware of it.

206.    The wrongful confinement of Plaintiff by co-defendants MAGNUSON, McGRORY and DOE #1 as described herein was not supported by probable cause to believe that Plaintiff had committed a crime.

207.    The wrongful confinement of Plaintiff by co-defendants MAGNUSON, McGRORY and DOE #1 described herein was not immunized from liability by any cognizable legal privilege.

208.    At all relevant times, the actions of MAGNUSON, McGRORY and DOE #1 as described herein were undertaken pursuant to, and within the course and scope of, their employment with NASSAU COUNTY, the NCPD and RYDER.

209.    At all relevant times, the wrongful actions of MAGNUSON, McGRORY and DOE #1 as described herein were undertaken with the knowledge of, and under the direction, supervision, and control of the co-defendants NASSAU COUNTY, the NCPD and RYDER.

210.    At all relevant times the wrongful actions of co-defendants MAGNUSON, McGRORY and DOE #1 as described herein were undertaken with the consent and tacit approval of co-defendants NASSAU COUNTY, the NCPD and RYDER.

211.    At all relevant times the actions of co-defendants MAGNUSON, McGRORY and DOE #1 as described herein were undertaken pursuant to the long-standing customs, usages, practices, policies and procedures of the co-defendants NASSAU COUNTY, the NCPD and RYDER as more fully described elsewhere in this Complaint at the paragraphs designated as "6", "165" through "174,"  and "257" through "271."

212.    As a direct and proximate result of the unlawful actions of MAGNUSON, McGRORY and DOE #1 as described herein, Plaintiff has suffered and continues to suffer physical injury, emotional distress, the loss of his personal property, the loss of his handgun license and economic damages in excess of THREE MILLION DOLLARS ($3,000,000).

213.    At all times mentioned herein, the co-defendants acted wantonly, willfully, maliciously and/or with reckless disregard of the consequences of their actions.

Accordingly, Plaintiff is entitled to an award of punitive damages, plus reasonable attorney's fees, costs and disbursements.

**AS AND FOR A ELEVENTH CAUSE OF ACTION**
**AGAINST CO-DEFENDANTS MALONEY, FINEO, DOE #2,**
**McGRORY, MAGNUSON and DOE #1**
**MALICIOUS PROSECUTION**
**(PENDENT STATE CLAIM)**

214.     Plaintiff hereby repeats and re-alleges each and every allegation contained in the paragraphs designated "1" through "213" with the same force and effect as if fully set forth herein.

215.     On or about July 19, 2016 and continuing for some time thereafter, co-defendants MALONEY, FINEO, DOE #2, McGRORY, MAGNUSON and DOE #1 knowingly, intentionally, wrongfully and maliciously caused a criminal prosecution to be brought against the Plaintiff, *to wit*: they falsely filed Supporting Depositions and Misdemeanor Informations with the NCPD and the Nassau County District Attorney's Office accusing the Plaintiff of the crimes of Menacing in the Second Degree (in violation of New York Penal Law § 120.14(1)) and Criminal Possession of a Weapon in the Fourth Degree (*i.e.,* possession of a dangerous weapon with intent to use the same unlawfully against another) (in violation of New York Penal Law § 265.01(2)).

216.     At the time these Supporting Depositions and Misdemeanor Informations were filed with the NCPD and the Nassau County District Attorney's Office, MAGNUSON, McGRORY, DOE #1, MALONEY, FINEO and DOE #2 knew that they were untrue.

217.     When MAGNUSON, McGRORY, DOE #1, MALONEY, FINEO and DOE #2 filed these false Supporting Depositions and Misdemeanor Informations with the

52

NCPD and the Nassau County District Attorney's Office, they knew - or should have known - that by falsely reporting to the police and the District Attorney that Mr. Semencic had pointed a gun at MALONEY and had menaced MALONEY with it, they would directly cause Mr. Semencic to be arrested and criminally prosecuted. MAGNUSON, McGRORY, DOE #1, MALONEY, FINEO and DOE #2 also knew – or should have known - that by making a false report against Mr. Semencic of Menacing and Unlawful Firearm Use to the police, they would directly cause all of Mr. Semencic's firearms to be confiscated and would directly cause Mr. Semencic's handgun license to be suspended and revoked.

218.    As a direct consequence of these malicious actions, and being actually innocent of the crimes for he was accused, Plaintiff was forced to defend himself in the Nassau  County Criminal Court.  This cost the Plaintiff significant amounts of time and money, as it required him to hire a criminal defense attorney, prepare a legal defense and make numerous appearances in Court. This process also exacted a significant emotional toll from the Plaintiff, causing him to experience intense fear, embarrassment, humiliation, stress, anxiety, frustration and anger for the duration of his prosecution and afterwards.

219.    At the time they arrested Plaintiff and caused charges to be filed against him,  MAGNUSON, McGRORY and DOE #1 lacked probable cause to believe that Plaintiff had committed the crimes of which they were accusing him.  In fact, at all times described herein MAGNUSON, McGRORY and DOE #1 had actual knowledge that Plaintiff was innocent of the charges they'd fabricated.

220.   Despite having actual knowledge of the Plaintiff's innocence, MAGNUSON, McGRORY, DOE #1, MALONEY, FINEO and DOE #2 wrongfully, intentionally and maliciously refused to notify the prosecuting attorney that the Plaintiff's arrest lacked probable cause, and that the Plaintiff was actually innocent of the their spurious charges.

221.   Despite having actual knowledge of the Plaintiff's innocence, MAGNUSON, MCGRORY, DOE #1, MALONEY, FINEO and DOE #2  wrongfully, intentionally and maliciously refused to withdraw the charges they'd falsely caused to be filed against the Plaintiff.

222.   Instead, MAGNUSON, McGRORY, DOE #1, MALONEY, FINEO and DOE #2 maliciously and intentionally caused the Plaintiff's prosecution to be continued and prolonged.  They did this by repeatedly failing to co-operate with the prosecuting attorney's office when asked to do so, and by repeatedly failing to appear in court when required.  In so doing, MAGNUSON, McGRORY, DOE #1, MALONEY, FINEO and DOE #2 knew that by failing to voluntarily have the charges withdrawn, while at the same time refusing to co-operate in the Plaintiff's prosecution, they would needlessly extend the Plaintiff's period of prosecution, thereby causing Plaintiff to incur significant additional financial expense and emotional trauma.

223.   On or about May 21, 2018 the criminal proceedings brought against Mr. Semencic in the Nassau County District Court were terminated in his favor, *to wit*: all criminal charges against Mr. Semencic were dismissed on the motions of Mr. Semencic's defense attorney.

224.    At all relevant times, the wrongful actions of MALONEY, FINEO and DOE #2 as described herein were undertaken with the knowledge of, in co-ordination with, and under the direction, supervision, and control of the co-defendants NASSAU COUNTY, NCPD, RYDER, MAGNUSON, McGRORY and DOE #1.

225.    At all relevant times, the actions of MAGNUSON, McGRORY and DOE #1 as described herein were undertaken pursuant to, and within the course and scope of, their employment with NASSAU COUNTY, the NCPD and RYDER.

226.    At all relevant times, the wrongful actions of MAGNUSON, McGRORY and DOE #1 as described herein were undertaken with the knowledge of, and under the direction, supervision, and control of the co-defendants NASSAU COUNTY, NCPD and RYDER.

227.    At all relevant times discussed herein the wrongful actions of co-defendants MAGNUSON, McGRORY and DOE #1 described herein were undertaken with the consent and tacit approval of co-defendants NASSAU COUNTY, NCPD and RYDER.

228.    At all relevant times discussed herein the actions of co-defendants MAGNUSON, McGRORY and DOE #1 described herein were undertaken pursuant to the long-standing customs, usages, practices, policies and procedures of the co-defendants NASSAU COUNTY, the NCPD and RYDER as more fully described elsewhere in this Complaint at the paragraphs designated as "6", "165" through "174," and "265" through "271."

229.    As a direct and proximate result of the unlawful actions of MAGNUSON, McGRORY, DOE #1, MALONEY, FINEO and DOE #2 as described herein, Plaintiff

has suffered and continues to suffer physical injury, emotional distress, the loss of his

personal property, the loss of his handgun license and economic damages in excess of

THREE MILLION DOLLARS ($3,000,000).

230.    At all times mentioned herein, the co-defendants acted wantonly, willfully,

maliciously and/or with reckless disregard of the consequences of their actions.

Accordingly, Plaintiff is entitled to an award of punitive damages, plus reasonable

attorney's fees, costs and disbursements.

**AS AND FOR A TWELFTH CAUSE OF ACTION
AGAINST CO-DEFENDANTS MALONEY, FINEO, DOE #2,
McGRORY, MAGNUSON and DOE #1
ABUSE OF PROCESS
(PENDENT STATE CLAIM)**

231.    Plaintiff hereby repeats and re-alleges each and every allegation contained

in the paragraphs designated "1" through "230" with the same force and effect as if fully

set forth herein.

232.    On or about July 19, 2016 and continuing for some time thereafter, co-

defendants MALONEY, FINEO, DOE #2, McGRORY, MAGNUSON and DOE #1

knowingly, intentionally, wrongfully and maliciously caused a criminal prosecution to be

brought against the Plaintiff, *to wit*: they intentionally filed false Supporting Depositions

and Misdemeanor Informations with the NCPD and the Nassau County District

Attorney's Office accusing the Plaintiff of the crimes of Menacing in the Second Degree

(in violation of New York Penal Law § 120.14(1)) and Criminal Possession of a Weapon

in the Fourth Degree (*i.e.,* possession of a dangerous weapon with intent to use the same

unlawfully against another) (in violation of New York Penal Law § 265.01(2)).

233.    At the time these Supporting Depositions and Misdemeanor Informations were filed with the NCPD and the Nassau County District Attorney's Office, MAGNUSON, McGRORY, DOE #1, MALONEY, FINEO and DOE #2 knew that they were untrue.

234.    When MAGNUSON, McGRORY, DOE #1, MALONEY, FINEO and DOE #2 filed these false Supporting Depositions and Misdemeanor Informations with the NCPD and the Nassau County District Attorney's Office, they knew - or should have known - that by falsely reporting to the police and the District Attorney that Mr. Semencic had pointed a gun at MALONEY and menaced MALONEY with it they would directly cause Mr. Semencic to be arrested and criminally prosecuted.

235.    MAGNUSON, McGRORY, DOE #1, MALONEY, FINEO and DOE #2 also knew – or should have known - that by making a false report against Mr. Semencic of Menacing and Unlawful Firearm Use to the police, they would directly cause all of Mr. Semencic's firearms to be confiscated and would directly cause Mr. Semencic's handgun license to be suspended and revoked.

236.    As a direct consequence of these malicious actions, and being actually innocent of the crimes for he was accused, Plaintiff was forced to defend himself in the Nassau  County Criminal Court.  This cost the Plaintiff significant amounts of time and money, as it required him to hire a criminal defense attorney, prepare a legal defense and make numerous appearances in Court. This process also exacted a significant emotional toll from the Plaintiff, causing him to experience intense fear, embarrassment, humiliation, stress, anxiety, frustration and anger for the duration of his prosecution and afterwards.

237.    At the time they arrested Plaintiff and caused charges to be filed against

him,  MAGNUSON, McGRORY and DOE #1 lacked probable cause to believe that

Plaintiff had committed the crimes of which they were accusing him.  In fact, at all times

described herein MAGNUSON, McGRORY and DOE #1 had actual knowledge that

Plaintiff was innocent of the charges they'd fabricated.

238.    Despite having actual knowledge of the Plaintiff's innocence,

MAGNUSON, McGRORY, DOE #1, MALONEY, FINEO and DOE #2 wrongfully,

intentionally and maliciously refused to notify the prosecuting attorney that the Plaintiff's

arrest lacked probable cause, and that the Plaintiff was actually innocent of their spurious

charges.

239.    Despite having actual knowledge of the Plaintiff's innocence,

MAGNUSON, McGRORY, DOE #1, MALONEY, FINEO and DOE #2 wrongfully,

intentionally and maliciously refused to withdraw the charges they'd falsely caused to be

filed against the Plaintiff.

240.    Instead, MAGNUSON, McGRORY, DOE #1, MALONEY, FINEO and

DOE #2 maliciously and intentionally caused the Plaintiff's prosecution to be continued

and prolonged.  They did this by repeatedly failing to co-operate with the prosecuting

attorney's office when asked to do so, and by repeatedly failing to appear in court when

required.  In so doing, MAGNUSON, McGRORY, DOE #1, MALONEY, FINEO and

DOE #2 knew that by failing to voluntarily have the charges withdrawn, while at the

same time refusing to co-operate in the Plaintiff's prosecution, they would needlessly

extend the Plaintiff's period of prosecution, thereby causing Plaintiff to incur significant

additional financial expense and emotional trauma.

241.     At some point in time after July 19, 2016 the co-defendants MAGNUSON, McGRORY, DOE #1, MALONEY, FINEO and DOE #2 wrongfully and maliciously caused a report to be filed with the Nassau County Handgun Licensing Authority indicating that Plaintiff had menaced MALONEY with a firearm.  Co-defendants MAGNUSON, McGRORY, DOE #1, MALONEY, FINEO and DOE #2 filed this report with the wrongful and malicious intention of permanently depriving Plaintiff of all of his firearms and having Plaintiff's handgun license revoked.

242.     At all relevant times, the wrongful actions of MALONEY, FINEO and DOE #2 as described herein were undertaken with the knowledge and consent of, in co-ordination with, and under the direction, supervision, and control of the co-defendants NASSAU COUNTY, NCPD, RYDER, MAGNUSON, McGRORY and DOE #1.

243.     At all relevant times, the actions of MAGNUSON, McGRORY and DOE #1 as described herein were undertaken pursuant to, and within the course and scope of, their employment with NASSAU COUNTY, the NCPD and RYDER.

244.     At all relevant times, the wrongful actions of MAGNUSON, McGRORY and DOE #1 as described herein were undertaken with the knowledge of, and under the direction, supervision, and control of the co-defendants NASSAU COUNTY, NCPD and RYDER.

245.     At all relevant times discussed herein the wrongful actions of co-defendants MAGNUSON, McGRORY and DOE #1 described herein were undertaken with the consent and tacit approval of co-defendants NASSAU COUNTY, NCPD and RYDER.

246.   At all relevant times discussed herein the actions of co-defendants MAGNUSON, McGRORY and DOE #1 described herein were undertaken pursuant to the long-standing customs, usages, practices, policies and procedures of the co-defendants NASSAU COUNTY, the NCPD and RYDER as more fully described elsewhere in this Complaint at the paragraphs designated as "6", "165" through "174," and "257" through "271."

247.   As a direct and proximate result of the unlawful actions of MAGNUSON, McGRORY, DOE #1, MALONEY, FINEO and DOE #2 as described herein, Plaintiff has suffered and continues to suffer physical injury, emotional distress, the loss of his personal property, the loss of his handgun license and economic damages in excess of THREE MILLION DOLLARS ($3,000,000).

247.   At all times mentioned herein, the co-defendants acted wantonly, willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, Plaintiff is entitled to an award of punitive damages, plus reasonable attorney's fees, costs and disbursements.

**AS AND FOR A THIRTEENTH CAUSE OF ACTION**
**AGAINST CO-DEFENDANTS NASSAU COUNTY, THE NCPD and RYDER**
**NEGLIGENT HIRING, SUPERVISION & RETENTION**
**(PENDENT STATE CLAIM)**

249.   Plaintiff hereby repeats and re-alleges each and every allegation contained in the paragraphs designated "1" through "247" with the same force and effect as if fully set forth herein.

250.   At all relevant times, NASSAU COUNTY, the NCPD and RYDER were in an  employer-employee relationship with MAGNUSON, McGRORY and DOE #1.

251.    At all relevant times, the actions of MAGNUSON, McGRORY and DOE #1 as described herein were undertaken pursuant to, and within the course and scope of, their employment with NASSAU COUNTY, the NCPD and RYDER.

252.    At all relevant times, the actions of MAGNUSON, McGRORY and DOE #1 as described herein were taken under the direction, supervision and control of NASSAU COUNTY, the NCPD and RYDER, and pursuant to the customs, practices, policies and procedures promulgated by NASSAU COUNTY, the NCPD and RYDER.

253.    At all relevant times RYDER occupied a position of managerial and supervisory authority within the NCPD, and had management authority over and supervisory responsibility for MAGNUSON, McGRORY and DOE #1.

254.    At all relevant times RYDER was ultimately responsible for implementing the customs, practices, policies and procedures promulgated by NASSAU COUNTY and the NCPD.

255.    At all relevant times RYDER was ultimately responsible for the hiring, training, conduct, supervision, discipline and termination of NCPD employees (including MAGNUSON, McGRORY and DOE #1).

256.    At all relevant times RYDER was ultimately responsible for upholding and enforcing the laws and rules of the United States, the State of New York, and the County of Nassau, and for ensuring that all NCPD personnel (including MAGNUSON, McGRORY and DOE #1) uphold and obey these same laws and rules.

257.    At all relevant times, NASSAU COUNTY, the NCPD and RYDER had actual notice of the deprivation of individual rights perpetrated not only by co-defendants

MAGNUSON, McGRORY and DOE #1, but also by other members of the NCPD not named in this Complaint.

258.    Upon information and belief, MAGNUSON, McGRORY and DOE #1 on prior occasions have violated the rights of other individuals in a manner similar to the ones alleged herein. NASSAU COUNTY, the NCPD and RYDER were aware of each and every such prior violation by MAGNUSON, McGRORY and DOE #1.

259.    At all relevant times, NASSAU COUNTY, the NCPD and RYDER had constructive notice of the deprivation of individual rights perpetrated not only by MAGNUSON, McGRORY and DOE #1, but also by other NCPD officers not named in this Complaint as such deprivations are long-standing, repeated and widespread.  Upon information and belief, it is the custom, pattern and practice of NCPD officers (including MAGNUSON, McGRORY and DOE #1) to violate an individual's rights in the manner(s) set forth herein, and the violation of individual rights is constant and prevalent throughout the NCPD.

260.    As part and parcel of this protracted and pervasive conduct, the NCPD and its officers utilized their actual and apparent authority over various individuals to carry out violations of the rights guaranteed to those individuals by the United States Constitution; the New York State constitution; New York's statutes, rules and regulations; and New York's common law.

261.    At all relevant times, NASSAU COUNTY, the NCPD and RYDER hired and staffed its police department with officers (including MAGNUSON, McGRORY and DOE #1) who were unsupervised, undisciplined, inadequately trained and wholly unsuited to perform as police officers.

262.    At all relevant times, NASSAU COUNTY, the NCPD and RYDER hired or retained employees (including MAGNUSON, McGRORY and DOE #1) who abused their authority and were physically and verbally abusive to members of the public.

263.    At all relevant times, NASSAU COUNTY, the NCPD and RYDER hired or retained employees  (including MAGNUSON, McGRORY and DOE #1) who retaliated against members of the public for, among other things, exercising their constitutional rights to speak freely, for seeking and petitioning for redress, for accessing the courts, for speaking out about matters of public concern and for legally possessing firearms.

264.    At all relevant times, NASSAU COUNTY, the NCPD and RYDER hired or retained employees  (including MAGNUSON, McGRORY and DOE #1) who intentionally engaged in differential treatment of members of the public that was irrational, wholly arbitrary and motivated by the pursuit of improper personal, political and/or illegal goals.

265.    At all relevant times, NASSAU COUNTY, the NCPD and RYDER knew, or should have known, that its employees (including MAGNUSON, McGRORY and DOE #1) exhibited out of control, violent, aggressive, illegal and unconstitutional behavior toward members of the public.

266.    At all relevant times, NASSAU COUNTY, the NCPD and RYDER knew, or should have known, that its employees (including MAGNUSON, McGRORY and DOE #1) were abusing their authority to, *inter alia*, carry out personal or political vendettas against members of the public.

267.   At all relevant times, NASSAU COUNTY, the NCPD and RYDER knew, or should have known, that staffing a police department with employees (including MAGNUSON, McGRORY and DOE #1)  who were unsupervised, undisciplined, inadequately trained and wholly unsuited to interact with the public would pose an obvious risk that members of the public with whom these officers might interact would be subject to out of control, violent, aggressive, illegal and unconstitutional behavior.

268.   Despite this knowledge, at all relevant times NASSAU COUNTY, the NCPD and RYDER failed to take any corrective action against these unsuitable employees (including MAGNUSON, McGRORY and DOE #1), failed to adopt policies or procedures that would have prevented the violations of individual rights alleged herein (including, but not limited to, providing internal discipline and additional training and supervision) and failed to terminate employees (including MAGNUSON, McGRORY and DOE #1) who were clearly unqualified and unsuited for their jobs.

269.   At all relevant times, NASSAU COUNTY, the NCPD and RYDER knew, or should have known, that by failing or refusing to take corrective measures against or terminate unsuitable employees (including MAGNUSON, McGRORY and DOE #1) who were physically and verbally abusive, who retaliated against other individuals, who acted arbitrarily and in furtherance of personal or political vendettas, or who were undisciplined, inadequately trained and unsuited to engage the general public, would result in repeated violations of individual rights protected by the constitution, and by statutory and common law.

270.   NASSAU COUNTY, the NCPD and RYDER owed the following duties of care to the Plaintiff: to uphold the law; to protect and safeguard the Plaintiff's

constitutional rights; to prevent the Plaintiff's constitutional rights from being violated by others (including by their own employees); to safeguard the Plaintiff against the criminal conduct of others (including the criminal conduct of their own employees); to keep the peace; to prevent the infliction of criminal damage and injury; to thoroughly investigate and properly process all allegations of criminal conduct brought to their attention; to apprehend and arrest all criminal wrongdoers; to ensure that their own employees are properly trained and disciplined; to ensure that their own employees obey the law at all times; and to prevent the loss of life, liberty and property.

271.    NASSAU COUNTY, the NCPD and RYDER breached these duties to the Plaintiff in the following ways: by failing to properly train MAGNUSON, McGRORY and DOE #1; by failing to properly supervise MAGNUSON, McGRORY and DOE #1; by failing to properly investigate all complaints of wrongdoing and abuse made against MAGNUSON, McGRORY and DOE #1; by failing to properly discipline MAGNUSON, McGRORY and DOE #1 for all prior abuses perpetrated by them; and for failing to terminate the employment of MAGNUSON, McGRORY and DOE #1 despite having actual and constructive notice that MAGNUSON, McGRORY and DOE #1 were unsuitable to continue their employment as NCPD officers.

272.    As a direct and proximate result of the negligence of NASSAU COUNTY, the NCDP and RYDER as described herein, Plaintiff has suffered and continues to suffer physical injury, emotional distress, the loss of his personal property, the loss of his handgun license and economic damages in excess of THREE MILLION DOLLARS ($3,000,000).

273. At all times mentioned herein, the co-defendants acted wantonly, willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, Plaintiff is entitled to an award of punitive damages, plus reasonable attorney's fees, costs and disbursements.

**AS AND FOR A FOURTEENTH CAUSE OF ACTION**
**AGAINST CO-DEFENDANTS FINEO, MALONEY, MAGNUSON and**
**McGRORY**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(PENDENT STATE CLAIM)**

274. Plaintiff hereby repeats and re-alleges each and every allegation contained in the paragraphs designated "1" through "273" with the same force and effect as if fully set forth herein.

275. As described above in the paragraphs designated "44" through "100", on or about July 19, 2016 and continuing thereafter, co-defendants FINEO, MALONEY, MAGNUSON and McGRORY wrongfully and maliciously subjected the Plaintiff to, or caused the Plaintiff to be subjected to, the following incidents of extreme, egregious and outrageous conduct:

a. an illegal search and seizure of his home and his property;

b. the use of excessive and unreasonable force upon his person;

c. the wrongful confiscation all of his firearms and subsequent wrongful refusal to return this property to him;

d. an unlawful arrest and a false imprisonment;

e. a false and malicious criminal prosecution; and

f. the wrongful revocation of his handgun license.

276.    At the time FINEO, MALONEY, MAGNUSON and McGRORY  subject the Plaintiff to these wrongdoings, they intended to cause – or disregarded the substantial likelihood that their actions would cause – Mr. Semencic to experience emotional distress and trauma.

277.    At all relevant times, the actions of MAGNUSON and McGRORY as described herein were undertaken pursuant to, and within the course and scope of, their employment with NASSAU COUNTY, the NCPD and RYDER.

278.    At all relevant times, the wrongful actions of MAGNUSON and McGRORY as described herein were undertaken with the knowledge of, and under the direction, supervision, and control of the co-defendants NASSAU COUNTY, NCPD and RYDER.

279.    At all relevant times discussed herein the wrongful actions of co-defendants FINEO, MALONEY, MAGNUSON and McGRORY described herein were undertaken with the consent and tacit approval of co-defendants NASSAU COUNTY, NCPD and RYDER.

280.    At all relevant times discussed herein the actions of co-defendants MAGNUSON and McGRORY as described herein were undertaken pursuant to the long-standing customs, usages, practices, policies and procedures of the co-defendants NASSAU COUNTY, the NCPD and RYDER as more fully described elsewhere in this Complaint at the paragraphs designated as "6", "165" through "174,"  and "257" through "271."

281.    As a direct and proximate result of the unlawful actions of MAGNUSON, MCGRORY, MALONEY and FINEO as described herein, Plaintiff has suffered and continues to suffer physical injury, emotional distress, the loss of his personal property, the loss of his handgun license and economic damages in excess of THREE MILLION DOLLARS ($3,000,000).

282.    At all times mentioned herein, the co-defendants acted wantonly, willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, Plaintiff is entitled to an award of punitive damages, plus reasonable attorney's fees, costs and disbursements.

### AS AND FOR A FIFTEENTH CAUSE OF ACTION
#### AGAINST CO-DEFENDANTS FINEO, MALONEY, MAGNUSON and McGRORY
#### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
#### (PENDENT STATE CLAIM)

283.    Plaintiff hereby repeats and re-alleges each and every allegation contained in the paragraphs designated "1" through "282" with the same force and effect as if fully set forth herein.

284.    At all pertinent times discussed herein co-defendants McGRORY and MAGNUSON were was charged with the following legal duties: of upholding, protecting and obeying the United States Constitution and the New York State Constitution, and the laws of the United States, the State of New York, the County of Nassau and the Town of West Hempstead; of protecting the citizens of the State of New York, the County of Nassau and the Town of West Hempstead (including the Plaintiff); of ensuring that these same citizens are not victimized, harassed, threatened, injured, or subject to false and malicious criminal complaints and criminal prosecutions; of ensuring that all NCPD

officers uphold, protect and obey the United States Constitution and the New York State Constitution, and the laws of the United States, the State of New York, the County of Nassau and the Town of West Hempstead; of ensuring that all NCPD officers protect the citizens of the State of New York, the County of Nassau and the Town of West Hempstead (including the Plaintiff); of ensuring that all NCPD officers refrain from victimizing, harassing, threatening and/or injuring the citizens of the State of New York, the County of Nassau and the Town of West Hempstead (including the Plaintiff); of ensuring that all NCPD officers refrain from filing false and/or malicious criminal complaints against the citizens of the State of New York, the County of Nassau and the Town of West Hempstead (including the Plaintiff); and of refraining themselves from filing false and/or malicious criminal complaints against the citizens of the State of New York, the County of Nassau and the Town of West Hempstead (including the Plaintiff).

285.    At all pertinent times discussed herein, co-defendants FINEO and MALONEY were charged with the following legal duties: of upholding, protecting and obeying the United States Constitution and the New York State Constitution, and the laws of the United States, the State of New York, the County of Nassau and the Town of West Hempstead; of refraining from victimizing, harassing, threatening and/or injuring the citizens of the State of New York, the County of Nassau and the Town of West Hempstead (including the Plaintiff); and of refraining from filing false and/or malicious criminal complaints against the citizens of the State of New York, the County of Nassau and the Town of West Hempstead (including the Plaintiff).

286.    As described above in the paragraphs designated "44" through "100", on or about July 19, 2016 and continuing thereafter, co-defendants FINEO, MALONEY,

MAGNUSON, and McGRORY violated these duties when they subjected the Plaintiff to, or caused the Plaintiff to be subjected to, the following outrageous incidents of wrongdoing:

    a.    an illegal search and seizure of his home and his property;

    b.    the use of excessive and unreasonable force upon his person;

    c.    the wrongful confiscation all of his firearms and subsequent wrongful refusal to return this property to him;

    d.    an unlawful arrest and a false imprisonment;

    e.    a false and malicious criminal prosecution; and

    f.    the wrongful revocation of his handgun license.

287.    At the time FINEO, MALONEY, MAGNUSON,  and McGRORY subject the Plaintiff to these wrongdoings, they knew – or should have known  - that their actions would cause Mr. Semencic to experience emotional distress and trauma.

288.    At all relevant times, the actions of MAGNUSON and McGRORY as described herein were undertaken pursuant to, and within the course and scope of, their employment with NASSAU COUNTY, the NCPD and RYDER.

289.    At all relevant times, the wrongful actions of MAGNUSON and McGRORY as described herein were undertaken with the knowledge of, and under the direction, supervision, and control of the co-defendants NASSAU COUNTY, NCPD and RYDER.

290.    At all relevant times discussed herein the wrongful actions of co-defendants FINEO, MALONEY, MAGNUSON and McGRORY described herein were

undertaken with the consent and tacit approval of co-defendants NASSAU COUNTY, NCPD and RYDER.

291.    At all relevant times discussed herein the actions of co-defendants MAGNUSON and McGRORY as described herein were undertaken pursuant to the long-standing customs, usages, practices, policies and procedures of the co-defendants NASSAU COUNTY, the NCPD and RYDER as more fully described elsewhere in this Complaint at the paragraphs designated as "6", "165" through "174,"  and "257" through "271."

292.    As a direct and proximate result of the unlawful actions of MAGNUSON, McGRORY, MALONEY and FINEO as described herein, Plaintiff has suffered and continues to suffer physical injury, emotional distress, the loss of his personal property, the loss of his handgun license and economic damages in excess of THREE MILLION DOLLARS ($3,000,000).

293.    At all times mentioned herein, the co-defendants acted wantonly, willfully, maliciously and/or with reckless disregard of the consequences of their actions. Accordingly, Plaintiff is entitled to an award of punitive damages, plus reasonable attorney's fees, costs and disbursements.

## JURY TRIAL DEMANDED

294.    Plaintiff hereby demands a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment against the Defendants:

a.   On the First Cause of Action in the sum of Three Million Dollars ($3,000,000);

b.   On the Second Cause of Action in the sum of Three Million Dollars ($3,000,000);

c.   On the Third Cause of Action in the sum of Three Million Dollars ($3,000,000);

d.   On the Fourth Cause of Action in the sum of Three Million Dollars ($3,000,000);

e.   On the Fifth Cause of Action in the sum of Three Million Dollars ($3,000,000);

f.   On the Sixth Cause of Action in the sum of Three Million Dollars ($3,000,000);

g.   On the Seventh Cause of Action in the sum of Three Million Dollars ($3,000,000);

h.   On the Eighth Cause of Action in the sum of Three Million Dollars ($3,000,000);

i.   On the Ninth Cause of Action in the sum of Three Million Dollars ($3,000,000);

j.   On the Tenth Cause of Action in the sum of Three Million Dollars ($3,000,000);

k.   On the Eleventh Cause of Action in the sum of Three Million Dollars ($3,000,000);

l.   On the Twelfth Cause of Action in the sum of Three Million Dollars ($3,000,000);

m.   On the Thirteenth Cause of Action in the sum of Three Million Dollars ($3,000,000);

n.   On the Fourteenth Cause of Action in the sum of Three Million Dollars ($3,000,000);

o.      On the Fifteenth Cause of Action in the sum of Three Million Dollars ($3,000,000);

p.      Punitive damages in the sum of Five Million Dollars ($5,000,000); and

q.      Granting such other and further relief as to the Court seems just and proper.

DATED: September 17, 2018
          White Plains, NY                              Yours, etc.,

                                                        THE LAW OFFICE
                                                        OF BRIAN T. STAPLETON, ESQ

                                                        By: Brian T. Stapleton, Esq.
                                                        *Attorneys for the Plaintiff*
                                                        *CARL SEMENCIC*
                                                        75 South Broadway – 4th Floor
                                                        White Plains, NY 10601
                                                        (914) 623-3024
                                                        brian.t.stapleton@gmail.com