UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CARL T. SEMENCIC,

                              Plaintiff,

          v.

THE COUNTY OF NASSAU, THE NASSAU
COUNTY POLICE DEPARTMENT,
COMMISSIONER PATRICK J. RYDER, individually
and officially, POLICE OFFICER ROBERT B.
McGRORY, individually and officially, POLICE
OFFICER KENNETH J. MAGNUSON, individually
and officially, JOHN DOE #1, individually and officially,
THE FRANKLIN SQUARE AND MUNSON FIRE
DEPARTMENT, DANIEL MALONEY, individually
and officially, ROBERT FINEO, individually and
officially, and JOHN DOE #2, individually and officially,

                              Defendants.
------------------------------------------------------------------X

**FILED**
**CLERK**

1/28/2020 11:26 am

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM & ORDER**
18-CV-5244 (SJF) (AKT)

FEUERSTEIN, District Judge:

    Plaintiff Carl T. Semencic ("Plaintiff" or "Semencic") commenced this action against the

County of Nassau, the Nassau County Police Department, Commissioner Patrick J. Ryder, Police

Officer Robert B. McGrory ("McGrory"), Police Officer Kenneth J. Magnuson ("Magnuson")

and John Doe #1 (collectively, the "County Defendants"), and the Franklin Square and Munson

Fire Department ("FSMFD"), Daniel Maloney ("Maloney"), Robert Fineo ("Fineo"), and John

Doe #2 (collectively "Defendants" or "Fire Department Defendants") seeking relief pursuant to

42 U.S.C. § 1983 and state law. The Fire Department Defendants have moved to dismiss the

complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Motion, Docket

Entry ("DE") [40].  Plaintiff opposes the motion. For the reasons set forth below, the motion is

granted.

# I. BACKGROUND

## A. Factual Background

The following facts are taken from the Complaint ("Compl."), DE [1], and are assumed to be true for purposes of this motion.[1]  In addition to the allegations in the complaint itself, that document is also "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir.2004) (citations omitted) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  The court "may take judicial notice of matters of public record, including pleadings, testimony, and decisions in prior state court adjudications, on a motion pursuant to Rule 12(b)(6)." *Johnson v. Pugh*, No. 11-CV-385, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013).

The FSMFD is a firefighting agency in Nassau County. Defendants Maloney and Fineo are employed by the FSMFD as firefighters. John Doe #2 is also employed by the FSMFD as a "management level firefighter" and has supervisory authority over Maloney and Fineo. Compl. ¶35. Semencic is a resident of West Hempstead, New York. He lawfully owns several handguns and long arms, and has a restricted carry handgun license issued by Nassau County.

On the evening of July 19, 2016 at approximately 8:00 p.m., Maloney and Fineo were conducting a door-to-door soliciting campaign in Semencic's neighborhood on behalf of the FSMFD. Semencic has posted a sign on his front storm door that reads "DO NOT KNOCK. NO PEDDLERS." Maloney approached Semencic's house, "intentionally and purposefully" ignored

---

[1] The factual recitation set forth herein is not intended to be a complete rendering of the factual allegations as those concerning the non-moving County Defendants are included only to the extent they pertain to the resolution of the pending motion.

the sign, and "loudly and repeatedly banged" on Semencic's front door. Compl. ¶46. At the time, Fineo was nearby, soliciting neighbors.

At the time Maloney knocked, Semencic had just finished working in his office and was heading towards his bedroom carrying an unloaded Glock pistol that he intended to secure in his nightstand for the night. He opened his front door and saw Maloney wearing his firefighter's uniform and standing behind the storm door. When he opened the front door, Semencic, who is right-handed and shoots exclusively with his right hand, was holding the pistol in his left hand "with the barrel pointed down." Compl. ¶54. Semencic then "pointed at the sign on his front storm door with his left hand and, in a clearly annoyed voice, told Maloney 'go away.' He then abruptly and forcefully closed his front door." *Id.* Semencic claims he never pointed the firearm at Maloney and did not step outside the house. After shutting the door, Semencic secured the firearm in his bedroom nightstand and proceeded to the den at the rear of the house to watch television with his wife.

The complaint alleges, upon information and belief, that Maloney "became fearful that his actions would expose him to liability" and therefore enlisted help from Fineo and John Doe #2. Compl. ¶56. The three firefighters concocted a narrative that was "false, untrue, and was intended solely to wrongfully cover-up and avoid liability for their misconduct and wrongfully foist all liability for their own misdeeds" upon Semencic. *Id.* The complaint does not include any allegations elaborating on the purported misdeeds committed by Defendants.

The alleged false narrative concocted by Defendants was that:

> Semencic had answered Maloney's knock in an angry fashion on
> the evening of July 19, 2016; that after answering his door
> Semencic then left the inside of his home and approached Maloney
> on his doorstep in a menacing fashion and with gun in hand; that
> Semencic then pointed his gun at Maloney and threatened Maloney

with harm; and that Semencic's actions caused Maloney to flee the
Semencic property in fear for his life.

Compl. ¶57. Maloney, Fineo, and John Doe #2 reported this false narrative to the Nassau County

Police Department. Defendant police officers Magnuson, McGrory, and Doe #1 (collectively, the

"Defendant Officers") responded to the call.

Shortly thereafter, the police arrived, knocked on the door, and as Semencic began to

open the front door, several police officers, led by the Defendant Officers, forced their way into

the home without Semecic's consent. Semencic, dressed in a t-shirt and shorts, was unarmed,

behaving peacefully and offering no resistance, yet was forced against his kitchen counter,

violently grabbed and turned around, and handcuffed roughly behind his back. Semencic was

removed from the home in handcuffs in full few of his watching neighbors. After placing

Semencic in the back of a squad car, the officers returned to the home to conduct a warrantless

search for weapons. The Defendant officers ultimately removed all guns from the home,

including many secured in gun safes.

On or about July 19, 2016, the Defendant Officers caused Defendants Maloney and Fineo

to file Supporting Depositions with the Nassau County Police Department.  These documents

were not attached to the complaint, but were provided by the parties.[2]  Maloney's first statement

is dated July 19, 2016 at 2050 hours, and states, in pertinent part:

> I was in police car . . . and I observed a male now known to me as
> Carl Semencic who is a male white who had earlier about 8 pm
> pointed a black handgun at me in front of 527 Dogwood Ave.
> Franklin Square. He was wearing glasses a t-shirt and shorts. I
> informed Officer DiCara that this is the same individual who had
> pointed a gun at me when I went to the house to solicit for a Fire
> Department fundraiser.

---

[2] Maloney's statements were provided by defendants.  *See* Declaration of Deanna Panico ("Panico Reply
Decl."), Ex D.  Fineo's statement was submitted by Plaintiff.  *See* Plaintiff's Mem. in Opp., Ex. A.  No
party has questioned the authenticity of these materials, which the Court finds to be integral to the
allegations of the complaint.

Maloney gave a second statement dated July 19, 2016 at 2120 hours, stating in pertinent part:

> I am a member of the Franklin Square Fire Department. We were out asking for donations going door to door. I was wearing my official Fire Dept shirt and cap and had my picture identification card hanging from my neck. I knocked on the front door of 527 Dogwood Ave. West Hempstead and a female opened the door. She was pushed out of the way by a male now known to me as Carl Semencic who was wearing a dark colored tee shirt, grey shorts and glasses. I identified myself as a Franklin Square fireman and that we were in the area asking for donations. He exited the residence holding a black hand gun in his left hand and pointed it at a sign on the front glass door that read "Do not knock no peddlers" and stated "go away." I stated "that's not necessary" he again pointed gun at sign and tapped on it and said "go away." At this time I was in fear of my life and I got off his property as fast as I could. I went down the block and notified my chief of Fire Dept. and he called the police. I did not give this person [] to put me in fear of my life and I want him arrested.

Fineo's statement, which is dated July 19, 2016 at 2100 hours, reads in pertinent part:

> I was on Dogwood Ave. Franklin Square soliciting for the Franklin Square Fire Department. I saw my co-fireman Daniel Maloney on the steps of 527 Dogwood Ave backpedaling with his hands up away from the front door.

After the firearms were removed from the home, Semencic was taken to the Fifth Precinct and issued a Desk Appearance Ticket charging him with Menacing in the Second Degree in violation of New York Penal Law § 120.14(1). He further alleges that the Defendant Officers conspired to concoct a false version of events culminating in Semencic's arrest to report to the Nassau County District Attorney in order to "wrongfully cover-up their own misdeeds, to wrongfully avoid liability for them and to wrongfully foist all liability for their own misdeeds" on Plaintiff. Compl. ¶83.

On or about July 20, 2016, the Defendant Officers filed a misdemeanor information against Semencic, who as a result, was formally charged with Menacing in the Second Degree and Criminal Possession of a Weapon in the Fourth Degree. On or about March 30, 2017

Semencic moved in the criminal action seeking, *inter alia,* an order dismissing the information as defective. By order dated July 5 2017, the state court granted the motion in part, finding that the weapons possession count was "facially defective" due to questions regarding the gun's operability. *See* Order ("7/5/17 Order") at 9, Panico Decl. Ex. C. The state court rejected Semencic's motion to dismiss the menacing count, however, noting that "a homeowner is not immune from prosecution for his or her conduct simply because it occurs on his or her premises," and concluding that the prosecution had demonstrated the existence of a prima facie case of menacing. *Id.* at 8-9.

On May 21, 2018, the remaining claim for menacing was dismissed on Semencic's motion to dismiss pursuant to CPL §30.30(1) for failure to comply with speedy trial time limits. *See* Order ("5/21/18 Order"), Panico Decl., Ex. B. The complaint alleges that the criminal proceedings were "terminated in his favor, *to wit:* all criminal charges against Mr. Semencic were dismissed on the motions of [his] defense attorney." Compl. ¶96.

## B. Procedural History

Semencic filed his complaint on September 18, 2018 alleging fifteen causes of action under federal and state law. Relevant to the current motion, he has asserted four (4) claims against the Fire Department Defendants, all under state law, for: (1) malicious prosecution; (2) abuse of process; (3) intentional infliction of emotional distress; and (4) negligent infliction of emotional distress. He further claims the prosecution was needlessly prolonged by the "intentional refusal" by, *inter alia,* Maloney and Fineo to "co-operate with the Nassau County District Attorney's Office." Compl. ¶92. Maloney and Fineo, (1) refused to notify the District Attorney's Office that Plaintiff was "actually innocent of the spurious charges," *id.* ¶93; (2) "refused to withdraw the charges," *id.* ¶94; and (3) "maliciously and intentionally" caused the

prosecution to be prolonged by failing to co-operate with the prosecution and failing to appear in court. *Id.* ¶95.

In addition to the allegations regarding his arrest and criminal prosecution, Semencic also alleges that various defendants, including, *inter alia,* Maloney and Fineo, "caused" a report to be filed with the Handgun Licensing Division of the Nassau County Police Department relating the "false narrative," with the "express and malicious intention" of having Semencic's handgun license revoked. Compl. ¶¶97-98.

Defendants now move to dismiss all the claims against them. Plaintiff opposes the motion.

## II. LEGAL STANDARDS

The standards for analyzing a motion to dismiss pursuant to Rule 12(b)(6) are well-established. The court must accept the factual allegations in the complaints as true and draw all reasonable inferences in favor of the plaintiff. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (citations omitted). The court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The determination of "whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Iqbal,* 556 U.S at 679. A pleading that does nothing more than recite bare legal conclusions, however, is insufficient to "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678-679; *see also Twombly,* 550 U.S. at 555 (holding that a "formulaic recitation of cause of action's elements will not do. . . Factual allegations must be enough to raise a right to relief above the speculative level" (citations omitted)). While Rule 8 does not require "detailed factual allegations," it does require more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

## III.  DISCUSSION

### A.  Claims against FSMFD

Under General Municipal Law § 50–i, a plaintiff may not maintain an action "for personal injury, wrongful death or damage to real or personal property" that the plaintiff alleges to have been sustained "by reason of the negligence or wrongful act" of, among other entities, a fire district, unless the plaintiff has timely filed a notice of such claim. N.Y. GEN. MUN. L. § 50–i(a). Section 50–e provides that, as a condition precedent to filing suit, a notice of claim must be filed against the municipal entity within ninety days after the claim accrues. N.Y. GEN. MUN. LAW § 50–e(1)(a). No notice of claim was filed in this case and thus the Defendants urge dismissal of the claims against them. Plaintiff counters that no notice of claim was required because defendant FSMFD is not a fire district covered by §50-i, but rather a fire company that sits within the fire district.

Although service of a notice of claim on a fire district is expressly required as a condition precedent to suit under §50-i, there is a distinction under New York law between a fire district and a fire department or company. *See, e.g., Roberts v. Coeymans Hollow Volunteer Fire Co.,* 168 A.D.3d 1144, 1145, 91 N.Y.S.3d 590 (3d Dep't 2019) (noting that defendant fire company "and the Fire District are separate entities" such that service of a notice of claim on former would

not satisfy requirement of service on the latter); *Bartnicki v. Centereach Fire Dep't*, 222 A.D.2d 637, 637, 635 N.Y.S.2d 696, 697 (2d Dep't 1995) (noting that the Centereach Fire Department is "an entity distinct from the [Centereach] Fire District"). Further, a fire fighting organization could be incorporated as a not-for-profit corporation or it could be an unincorporated association.

There is no information currently before the Court regarding how the FSMFD is organized. The complaint simply alleges that the FSMFD is a firefighting "agency" in Nassau County. While both Plaintiff and Defendants have submitted a fire district map of Nassau County that shows "Franklin Square" as one of seven areas within the Seventh Battalion, the map does not specifically designate the FSMFD as the provider of services in Franklin Square. In short, there is insufficient factual matter in either the complaint or the parties submissions to determine whether, as a matter of law, a notice of claim was required in this case. Accordingly, the motion to dismiss on this basis is denied.

Nevertheless, the FSMFD's dismissal from this action is warranted since the complaint fails to include any factual allegations concerning this defendant. In addition, there is neither a claim, nor allegations supporting a claim, of respondeat superior liability on the part of the FSMFD. The motion to dismiss the FSMFD from the complaint is granted.

## B. Malicious Prosecution

To establish a malicious prosecution claim under New York law, a plaintiff must establish: (1) commencement of a criminal proceeding; (2) that was terminated in plaintiff's favor; (3) that it lacked probable cause; and (4) that it was brought with actual malice. *See Cantalino v. Danner,* 96 N.Y.2d 391, 394, 754 N.E.2d 164, 729 N.Y.S.2d 405 (2001). "A failure to establish any one of those elements results in the defeat of the plaintiff's cause of action." *Baker v. City of New York,* 44 A.D.3d 977, 979, 845 N.Y.S.2d 799 (2d Dep't 2007). Semencic

has failed to adequately plead the first element of a malicious prosecution claim as to the Defendants and thus the claim fails.

Generally, a claim for malicious prosecution will not lie against a complaining witness who merely provides information to law enforcement. "[A] civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for . . . malicious prosecution." *Mesiti v. Wegman,* 307 A.D.2d 339, 340 (2d Dep't 2003) (internal quotation marks and citation omitted). "Nor does identifying plaintiff as the perpetrator of a crime, signing the summons or testifying at trial give rise to tort liability." *Du Chateau v. Metro-North Commuter R.R. Co,* 253 A.D.2d 128, 131, 688 N.Y.S.2d 12 (1st Dep't 1999). For a complaining witness to be liable for malicious prosecution, plaintiff must allege that he "played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act" or "affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal to the point where the officer is not acting of his own volition." *Mesiti,* 307 A.D.2d at 340 (internal quotation marks and citation omitted). "Merely giving false information to the authorities does not constitute initiation of the proceeding without an additional allegation or showing that, at the time the information was provided, the defendant knew it to be false, yet still gave it to the police." *Coscia v. El Jamal*, 156 A.D.3d 861, 863-64, 69 N.Y.S.3d 320 (2d Dep't 2017) (internal quotation marks and citation omitted).

In his opposition to this motion, Plaintiff identifies the following actions taken by the Defendants that he claims satisfies his burden of pleading that they commenced the prosecution: (1) they "concocted a narrative that was false," agreed to report the narrative, and reported it to

the police,[3] Compl. ¶¶56-58; (2) Maloney and Fineo filed Supporting Depositions that were untrue and supported the false narrative, *id.* ¶¶86-88; and (3) they maliciously and needlessly prolonged the prosecution by refusing to withdraw the charges and by failing to cooperate with the District Attorney's office. *Id.* ¶¶ 92-95.

It cannot be disputed that Maloney and Fineo executed the Supporting Depositions. Beyond this, however, the complaint is devoid of any factual allegations of any encouragement or importuning by the individual Fire Department Defendants. The complaint does not allege a single additional fact suggesting that any of the Defendants had any conversations with the police or took any other affirmative steps to pursue Semencic's prosecution. There are no allegations concerning conduct by Fineo, and his Supporting Deposition does not contain any content that could be construed as encouragement or importuning. As to Maloney, his identification of Semencic and the statement in his Supporting Deposition that he wanted Semencic arrested do not rise to the level of encouraging or taking an active role that has the effect of taking the decision to arrest out of the hands of the police. If these simple facts were sufficient to state a claim, then any victim of a crime who reported it and identified the alleged perpetrator would be exposed to liability should the prosecution of that crime prove unsuccessful.

To satisfy the element that Defendants initiated the prosecution, Plaintiff must plausibly allege that the statements given to the police were false and Defendants knew them to be false when they gave them. Beyond their alleged participation in the concoction of the "false narrative," the complaint includes no factual allegations against Fineo or John Doe # 2 that plausibly suggest either initiated the prosecution of Semencic. Semencic generally states that all

---

[3]Although not reflected in the complaint, the parties' memoranda suggest that they agree that the unnamed, non-party Chief of the Fire Department placed the actual telephone call to the police.

the Supporting Declarations, including presumably Fineo's, contained false statements, but has not identified any alleged falsehood in Fineo's statement, which says in substance only that he saw Maloney backpedaling away from Semencic's house with his hands raised.

Semencic points to various statements in Maloney's two Supporting Depositons which Semencic characterizes as discrepancies. For example, Maloney says in one statement that Semancic pointed a gun at him while in the other, Maloney says only that Semencic used the gun to point at the sign on the door. Semencic further claims that some statements were outright falsehoods such as that a female first answered the door and that Semencic exited the house during the encounter. Despite Semencic's argument to the contrary, the two Supporting Depositions are not facially inconsistent. Moreover, any purported inconsistency does not necessarily mean that one or both of the statements is false. The existence of an alleged discrepancy does not, in the absence of any supporting factual allegations, plausibly allege that the statements were false and that Maloney knew them to be so at the time he made them.

There are no factual allegations to plausibly suggest that Defendants lacked reasonable cause to believe that Semencic had menaced Maloney with a weapon in violation of New York law. Plaintiff was charged by information with menacing in the second degree, which provides that "[a] person is guilty of menacing in the second degree when. . . He or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm. . . N.Y. PENAL LAW § 120.14. Semencic's own version of the events, in which he concedes his display of the gun, coupled with Maloney's assertion in his statement that he was "in fear of his life," essentially establishes a menacing charge. Indeed, the state court in denying Semencic's first motion to dismiss the

menacing count, acknowledged his arguments regarding inconsistencies within Maloney's statements, but noted that

> neither actually making a threatening gesture, nor pointing a gun directly at someone is an element of menacing in the second degree. 'Display' of the weapon . . . is what is required, and it is my view that, even if the complaining witness' assertion in one of his supporting depositions that he identified [Semencic] as the person 'who had pointed a gun at me' does not constitute an attestation that that is what [Semencic] actually did, **pointing a gun at and tapping that gun against a 'Do Not Knock No Peddlers' sign and saying 'Go Away' can, given what guns are designed to do, be perceived as an attempt to instill the requisite fear that injury will ensue if the sign and the command are not obeyed."**

7/5/17 Order at 9 (emphasis supplied).  Any alleged inconsistencies in Maloney's statements are not relevant to the charge brought against Semencic. *See Viza v. Town of Greece*, 94 A.D.2d 965, 965, 463 N.Y.S.2d 970 (4th Dep't 1983) (the "only claimed falsity" concerned a "a disputed fact which can have no bearing on the charges against plaintiff").[4]

 The complaint fails to plausibly allege that the Defendants initiated the prosecution against Plaintiff.  As such, their motion to dismiss this claim is granted without need for discussion of the remaining elements.

## C.  Abuse of Process

To state an abuse of process claim under New York law, a plaintiff must allege that a defendant "(1) employed regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Hoffman v. Town of Southampton,* 523 F. App'x 770, 771 (2d Cir. 2013) (internal quotation marks, alteration, and

---

[4] Semencic's contention that Defendants maliciously and needlessly prolonged the prosecution by, *inter alia,* failing to cooperate with the District Attorney lacks any supporting factual allegations.  It also seems contrary to his arguments that Defendants encouraged his prosecution.

citation omitted).  The collateral objective element is the "crux of a malicious abuse of process claim."  *Leibovitz v. City of New York,* No. 14-CV-7106, 2018 WL 1157872, at *16 (E.D.N.Y. Mar. 2, 2018) (internal quotation marks and citation omitted).  Semencic has failed to allege that defendants' actions were for the purpose of obtaining a collateral objective and thus his claim fails.[5]

To establish a "collateral objective," Plaintiff must allege that the Defendants "aimed to achieve a collateral purpose beyond or in addition to criminal prosecution." *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003); *see also Pinter v. City of New York*, 976 F. Supp. 2d 539, 568 (S.D.N.Y. 2013) ("[T]he proper use of legal process based on an improper or malicious *motive* such as a desire for retaliation is insufficient to satisfy the 'collateral objective' requirement" (emphasis in original)).  Improper motive is not enough, but rather a plaintiff must allege that a defendant had "an ulterior *purpose* or *objective"* in pursuing plaintiff's prosecution. *Savino,* 331 F.3d at 78 (emphasis in original) (no abuse of process claim where plaintiff alleged that the motive for investigation and arrest was to seek "vindication" for the City's political embarrassment and to punish plaintiff for his "lawfully and properly earned overtime compensation"); *see also Scott v. City of New York*, No. 16-CV-834, 2020 WL 208915, at *12 (E.D.N.Y. Jan. 14, 2020) (to succeed on abuse of process claim, plaintiff "must prove that the Individual Defendants acted not merely with an improper motive, but to achieve an improper purpose"); *Crews v. Cty. of Nassau*, No. 06-CV-2610, 2007 WL 4591325, at *12 (E.D.N.Y. Dec. 27, 2007) (abuse of process claim fails where plaintiffs "have merely alleged that defendants were motivated by their desire to cover up their misdeeds, but not that defendants had a purpose other than to prosecute" a plaintiff). Ulterior purposes include "the infliction of economic harm,

---

[5]The Court declines to address the first two elements of the cause of action; however, this should not be construed as a finding that those elements were adequately pled.

extortion, blackmail and retribution." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 275 (S.D.N.Y. 2010); *see generally TADCO Constr. Corp. v. Dormitory Auth. of State of New York*, 700 F. Supp. 2d 253, 272 (E.D.N.Y. 2010) (allegations that defendants had individual plaintiff arrested to intimidate and frustrate plaintiffs "and thereby obtain an advantage over them in the ongoing contractual and construction dispute" were sufficient to state collateral objective on motion to dismiss). "In other words, '[a]buse of process resembles a form of extortion, by which the defendant invokes legal process to coerce the plaintiff into doing something other than what the process necessitates.'" *Folk v. City of New York*, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017) (quoting *Krebs v. United States*, No. 98–CV–2590, 1999 WL 185263, at *5 (S.D.N.Y. Mar. 31, 1999)).

The complaint alleges that, *inter alia,* Maloney and Fineo, among others, filed false Supporting Depositions when they knew, or should have known, that Semencic would be arrested and criminally prosecuted, would have his firearms confiscated, and would lose his handgun license. Compl. ¶¶234-35; *see also id.* ¶ 217 (defendants knew or should have known that by making a false report, "they would directly cause all of [Plaintiff's] firearms to be confiscated and would directly cause [Plaintiff's] handgun license to be suspended and revoked"). In opposition to this motion, Semencic argues that the Defendants sought to achieve the wrongful collateral objective of "having the Plaintiff's firearm permit revoked and having all of the Plaintiff's firearms taken away from him." Plaintiff's Memorandum of Law in Opposition, ("Pl. Mem. in Opp.") at 21, DE [41].

Plaintiff's allegations are vague and conclusory and do not plausibly support a claim for abuse of process. There are no factual allegations to suggest that the Defendants knew about either Semencic's firearms collection or his handgun license. The lone plausible fact alleged is

that the Defendants knew Semencic possessed one pistol – the one that he held in the encounter with Maloney. It is implausible to infer that they plotted to remove all of Semencic's firearms and/or revoke his license where there is no allegation that they knew or had reason to know that he possessed additional firearms or a license. Dismissal is warranted for this reason alone.

In addition, the purported objective identified by Semencic is not collateral to the process, but rather relates to the prosecution. Revocation of a gun permit as the result of a prosecution does not constitute a collateral objective. *See Arrington v. City of New York*, 628 F. App'x 46, 50 (2d Cir. 2015) (summary order) (where charges were dismissed, but City nevertheless revoked plaintiff's gun permit, plaintiff's claim that defendant commenced prosecution "to punish him for exercising his right to bear arms is a mere allegation of a retaliation motive, not a collateral objective"); *Oquendo v. City of New York,* No. 14-CV-2582, 2017 WL 6729850, at *7 (E.D.N.Y. Nov. 15, 2017) (noting that purported collateral objectives, including to deny plaintiff "the right to carry a firearm as a retired Detective" do not constitute reasons wholly outside the initial prosecution), *aff'd,* 774 F. App'x 703 (2d Cir. 2019).

## D. Emotional Distress Claims

The complaint asserts claims for both intentional and negligent infliction of emotional distress. Defendants' motion to dismiss is granted as to both claims.

### 1. Intentional Infliction of Emotional Distress

A successful cause of action for intentional infliction of emotional distress requires a plaintiff to establish four elements: "(1) extreme and outrageous conduct; (2) intent to cause, or disregard the substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Marmelstein v. Kehillat New Hempstead*, 45 A.D.3d 33, 40, 841 N.Y.S.2d 493 (1st Dep't 2007). Claims for

intentional infliction of emotional distress are subject to a one-year statute of limitations under New York law. N.Y. C.P.L.R. § 215(3); *see, e.g, Abdallah v. City of New York,* No. 95 Civ. 9247, 2001 WL 262709, at *5 (S.D.N.Y. Mar. 16, 2001). The limitations period begins to run on the date of the injury. *See Romeo v. Aid to the Developmentally Disabled, Inc.*, No. 11-CV-6340, 2013 WL 1209098, at *7 (E.D.N.Y. Mar. 22, 2013).

Plaintiff's arrest occurred on July 19, 2016, and this action was commenced on September 18, 2018. There are no factual allegations concerning conduct by any of the Defendants occurring during the one-year period prior to commencement of this action. Accordingly, Plaintiff's intentional infliction of emotional distress claim is time barred.

Even if timely brought, the allegations do not state a claim for intentional infliction of emotional distress. Plaintiff alleges that the Defendants gave false information to the police leading to Semencic's arrest and prosecution. Such an allegation, "even if true, [does] not describe conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Brown v. Sears Roebuck & Co.,* 297 A.D.2d 205, 212, 746 N.Y.S.2d 141 (1st Dep't 2002) (quoting *Murphy v. Am. Home Prods. Corp.,* 58 N.Y.2d 293, 303, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983) (internal quotation marks and citation omitted)). The motion to dismiss this claim is granted.

## 2. Negligent Infliction of Emotional Distress

A plaintiff may establish a claim for negligent infliction of emotional distress under New York law in one of two ways: the "bystander" theory or the "direct duty" theory. *See Mortise v. United States,* 102 F.3d 693, 696 (2d Cir. 1996). Semencic seeks relief under the direct duty theory which requires him to show that he "suffers an emotional injury from defendant's breach

of a duty which unreasonably endangered [his] own physical safety." *Id.* (citing *Kennedy v. McKesson Co.,* 58 N.Y.2d 500, 504, 448 N.E.2d 1332, 462 N.Y.S.2d 421 (1983)). The duty "must be specific to the plaintiff, and not some amorphous, free-floating duty to society." *Mortise,* 102 F.3d at 696 (citing *Johnson v. Jamaica Hosp.,* 62 N.Y.2d 523, 526-27, 467 N.E.2d 502, 478 N.Y.S.2d 838 (1984)); *see also St. John v. Rein Teen Tours, Inc.*, No. 99CIV.2537, 2000 WL 977685, at *2 (S.D.N.Y. July 17, 2000) ("the special duty that is required cannot be directed to a class of people but rather must be specific to the particular plaintiff"). There must be "unique facts where a special duty is owed." *Kojak v. Jenkins,* No. 98 CIV.4412, 1999 WL 244098, at *9 (S.D.N.Y. Apr. 26, 1999) (internal quotation marks and citation omitted). "Where there is no obligation unique to the plaintiff owed, no recovery is allowed." *McCray v. City of New York,* No. 03 CIV 10080, 2007 WL 4352748, at *29 (S.D.N.Y. Dec. 11, 2007) (internal quotation marks and citation omitted).

Regarding the duty owed to him, Plaintiff states only that Maloney and Fineo were "charged with" the legal duties of: (1) upholding, protecting, and obeying the United States Constitution and the New York Constitution, and the laws of the United States, New York, Nassau County, and the Town of West Hempstead; (2) refraining from victimizing, harassing, threatening and/or injuring the citizens of New York, Nassau County, and the "Town of West Hempstead (including the Plaintiff)"; and (3) refraining from filing false and/or malicious complaints against the citizens of of New York, Nassau County, and the Town of West Hempstead (including the Plaintiff)." Compl. ¶285. He alleges that defendants violated these duties when they subjected him to, or caused him to be subjected to, "outrageous incidents of wrongdoing" including (a) an illegal search of his home and seizure of his property; (b) the use of excessive force against him; (c) the wrongful confiscation of his firearms; (d) unlawful arrest

and false imprisonment; (e) false and malicious prosecution; and (f) the wrongful revocation of his handgun license. *Id.* ¶ 288.

Such generalized duties do not support a claim for negligent infliction of emotional distress since, by their very nature, these "duties" are owed to all people, not just to Semencic. *See McCray,* 2007 WL 4352748, at *29 (dismissing claim where defendants cannot "be alleged to owe Plaintiffs a duty which is not owed likewise to all citizens"); *Kojak,* 1999 WL 244098, at *9 (claim dismissed where plaintiff failed to allege any specific duty owed to her by defendant "other than the duty to obey the law"). As the complaint recognizes, Semencic is only one member of a class of citizens to whom these alleged duties are owed.

Furthermore, the complaint fails to allege facts regarding any danger to Semencic's physical safety resulting from the conduct of the Defendants. Although actual physical harm is not required to state a claim under the direct duty theory, "there must be "breach of a duty owed to plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety." *Rivers v. Towers, Perrin, Forster & Crosby Inc.*, No. CV-07-5441, 2009 WL 817852, at *10 (E.D.N.Y. Mar. 27, 2009) (internal quotation marks and citation omitted). "[T]he unreasonable endangerment element of a cause of action for negligent infliction of emotional distress involves an objective inquiry turning on whether a plaintiff's physical safety actually was endangered, not a subjective evaluation dependent on the plaintiff's state of mind." *St. John,* 2000 WL 977685, at *3. Semencic has alleged no facts that plausibly suggest that his own physical safety was unreasonably endangered. Any allegations of physical harm or threats of such harm he suffered arise from the conduct of the Defendant Officers incident to his arrest. There are no allegations that suggest that the Defendants, by lodging a complaint leading to police officers' intervention, could reasonably believe that Plaintiff was in

danger of suffering physical harm at the hands of those officers. The complaint contains no plausible allegation of physical danger arising from Defendants' conduct.

Finally, deliberate or intentional actions do not create a claim for negligent infliction of emotional distress. Plaintiff's final allegation under this cause of action is that at all times, defendants "acted wantonly, willfully, maliciously and/or with reckless disregard of the consequences of their actions." Compl. ¶293. Semencic makes no factual allegations that support a negligence theory. Though the Federal Rules permit litigants to allege alternate, or inconsistent, claims, "when the conduct alleged, if true, may only give rise to liability for an intentional act, a claim of negligence may be dismissed." *Bah v. City of New York*, No. 13 Civ. 6690, 2014 WL 1760063, at *13 (S.D.N.Y. May 1, 2014). Since, as here, the alleged acts were "intentional and deliberate allegedly in their nature offensive, they are outside the ambit of actionable negligence." *Wahlstrom v. Metro-North Commuter R.R. Co.,* 89 F. Supp. 2d 506, 531-32 (S.D.N.Y. 2000) (internal quotation marks and citation omitted).

## E. Leave to Amend

Leave to amend a complaint "should be freely given when justice so requires," FED. R. CIV. P. 15(a)(2), but whether to grant or deny leave to amend lies in the sound discretion of the court. *See McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007). Where a plaintiff does not request leave to amend, the court may *sua sponte* decline to give leave to amend. *See Bright-Asante v. Wagner,* No. 15-CV-9110, 2017 WL 6948359, at *10 (S.D.N.Y. Dec. 1, 2017). As the Second Circuit has held, "[w]hile leave to amend under the Federal Rules of Civil Procedure is 'freely granted,' . . . no court can be said to have erred in failing to grant a request that was not made." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 126 (2d Cir. 2013) (quoting *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011)); *see also Malgieri v. Ehrenberg,*

No. 12-CV-2517, 2012 WL 6647515, at *9 (S.D.N.Y. Dec. 21, 2012).  ("a district court has no obligation to grant leave to amend *sua sponte*")

Plaintiff, who has been represented by counsel throughout this litigation, has made no request, formal or informal, to further amend.  He did not cross move for leave to amend, his opposition papers fail to make even a cursory stab at such a request, and he has not provided a proposed amended complaint or presented any proposed factual enhancements.  As Plaintiff has not evidenced a desire to replead much less provided any indication that repleading would cure the deficiencies discussed above, dismissal of the claims against the Fire Department Defendants is with prejudice.

**IV. CONCLUSION**

Defendants' motion to dismiss, DE [40], is granted.  The Clerk of the Court is directed to terminate defendants Franklin Square and Munson Fire Department, Daniel Maloney, Robert Fineo, and John Doe #2.

**SO ORDERED**.

/s/ *Sandra J. Feuerstein*

Sandra J. Feuerstein
United States District Judge

Dated:  January 28, 2020
       Central Islip, New York