UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CARL SEMENCIC,

                      Plaintiff,              18-CV-05244 (SJF)(AKT)

   -against-

THE COUNTY OF NASSAU, THE NASSAU
COUNTY POLICE DEPARTMENT, COMMISSIONER
PATRICK J. RYDER, individually and officially,
POLICE OFFICER ROBERT B. McGRORY,
Individually and officially, POLICE OFFICER
KENNETH J. MAGNUSON, individual and officially,
JOHN DOE #1, individually, THE FRANKLIN
SQUARE AND MUNSON FIRE DEPARTMENT,
DANIEL MALONEY, individually, ROBERT
FINEO, individually, and JOHN DOE #2,
Individually,

                    Defendants.
-------------------------------------------------------------------X


**COUNTY DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION TO VACATE CONTEMPT ORDER AND ORDER STRIKING ANSWER AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR A DEFAULT JUDGMENT**


                                                JARED A. KASSCHAU
                                                Nassau County Attorney
                                                By: Stephen Carlin
                                                Deputy County Attorney
                                                One West Street
                                                Mineola, New York 11501
                                                Attorney for County Defendants

**PRELIMINARY STATEMENT**

This memorandum of law is respectfully submitted in support of the cross-motion to vacate the Court's oral order adjudging The County of Nassau, The Nassau County Police Department (the "County"), Commissioner Patrick J. Ryder, individually and officially, Police Officer Robert B. McGrory, Individually and officially, Police Officer Kenneth J. Magnuson, individually and officially (hereinafter collectively referred to as the "County Defendants") in contempt of Court and striking the County Defendants' Answer as punishment for contempt. This motion is also submitted in opposition to Plaintiff's application for the entry of a default judgment in the amount of $24,142,471.78 against the County and Commissioner Ryder pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rule 55.2(b). It is respectfully submitted that the Court's Order adjudging the County in contempt was without basis and the penalty imposed was entirely out of proportion to the conduct found to be contumacious, therefore, the contempt order should be vacated and the motion for a default judgment denied.

**ARGUMENT**

**I.    THE DEFAULT ORDER SHOULD BE VACATED**

The Court's oral Order at the March 10, 2020 conference holding the County Defendants in contempt of court, striking the County Defendants' answer, and adjudging the County Defendants to be in default must be vacated because the default was not willful and the County Defendants maintain a meritorious defense in that the oral Order given at the February 4, 2020 conference to return Plaintiff's firearms within 30 days was given without proper basis and was not given on the record.

Federal Rule of Civil Procedure 55 provides for default when a party has failed to plead or otherwise defend as provided by the rules. Fed. R. Civ. P. 55(a); *Enron Oil Corp. v.*

*Diakuhara,* 10 F.3d 90, 95 (2d Cir.1993). A judgment by default may be entered by the court on a party's application for a default judgment. Fed. R. Civ. P. 55(b)(2); *Enron,* 10 F.3d at 95. An entry of default may be set aside "for good cause," whereas a default judgment may be set aside only in accordance with Rule 60(b). Fed. R. Civ. P. 55(c).

Federal Rule of Civil Procedure 60(b) provides various reasons for granting relief from a final judgment or order of the court. In general, the district court's decision to grant relief under Rule 60(b) is reviewed for abuse of discretion. *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1140 (2d Cir.1994). Since Rule 60(b) allows extraordinary relief, it is invoked only if the moving party meets its burden of demonstrating "exceptional circumstances," and should not be used to circumvent other rules. *Id.* at 1142.

Fed. R. Civ. P. 60 (b) states, in relevant part: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> **(1)** mistake, inadvertence, surprise, or excusable neglect;
>
> **(6)** any other reason that justifies relief."

A motion under Rule 60(b) is addressed to the sound discretion of the trial court. *Velez v. Vassallo,* 203 F.Supp.2d 312, 333 (S.D.N.Y. 2002). On a motion to set aside a default judgment, the defaulting party bears the burden of proof, *see In re Martin–Trigona,* 763 F.2d 503, 505 n. 2 (2d Cir.1985), but doubts should be resolved in favor of the party seeking relief. *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (2d Cir.1993). Because Rule 60(b) allows extraordinary relief, it should be invoked only if the moving party meets its burden of demonstrating "exceptional circumstances." *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1142 (2d Cir.1994); *see*

*also Artmatic USA Cosmetics v. Maybelline Co.,* 906 F.Supp. 850, 853 (E.D.N.Y.1995) (Glasser, J.).

In the Second Circuit, courts evaluate whether to grant such motions by weighing three criteria: "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." *Davis v. Musler,* 713 F.2d 907, 915 (2d Cir.1983). "An application for relief under 60(b) 'shall be made within a reasonable time ... not more than one year after the judgment ... was entered or taken.'" *Sasso v. M. Fine Lumber Co., Inc.,* 144 F.R.D. 185, 188 (E.D.N.Y. 1992) (quoting F.R.C.P. 60(b)).

In general, on a motion to set aside a default judgment, the defaulting party must come forward with some explanation for the default. *Artmatic USA Cosmetics, a Div. of Arthur Matney Co., Inc. v Maybelline Co., a Div. of Schering Plough, Inc.,* 906 F Supp 850, 854-55 (E.D.N.Y. 1995), citing *Sony Corp. v. Elm State Electronics,* 800 F.2d 317, 319 (2d Cir. 1986). For example, a default will be held willful if the party caused it intentionally. *Commercial Bank,* 15 F.3d at 244 (defendant purposely evaded service); *Action S.A. v. Marc Rich,* 951 F.2d 504, 507 (2d Cir. 1991), *cert. denied,* 503 U.S. 1006, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992) (defendant admitted deliberately choosing not to appear in action). Courts have also held a default to be willful when a defendant knew about the complaint and failed to respond. *Marziliano v. Heckler,* 728 F.2d 151, 156 (2nd Cir. 1984) (default held willful where defendant's attorney, without explanation, failed to inform the court about a stipulation extending defendant's time to respond). In addition, courts have generally held a default to be willful when a lawyer neglects a case for an extended period of time. *Walpex Trading Co. v. Yacimientos Petroliferos,* 109 F.R.D. 692 (S.D.N.Y. 1986).

"The boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable." *King v Galluzzo Equip. & Excavating Inc.,* 223 F.R.D. 94, 97 (E.D.N.Y. 2004); *Int'l Painters and Allied Trades Union and Indus. Pension Fund v. H.W. Ellis Painting Co., Inc.,* 288 F.Supp.2d 22, 26 (D.D.C.2003) (citing *Gucci Am., Inc. v. Gold Ctr. Jewelry,* 158 F.3d 631, 634 (2d Cir.1998), *cert. denied,* 525 U.S. 1106, 119 S.Ct. 873, 142 L.Ed.2d 774 (1999)); *see also Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.,* 92 F.3d 57 (2d Cir. 1996) (filing mistake by clerk for defendant's in-house counsel not willful but weighs somewhat against granting relief).

As to the first prong, the County Defendants' conduct leading to the order of default was not willful. As evidenced by the accompanying Declaration of Deputy County Attorney Stephen Carlin and exhibits annexed thereto, the County Defendants clearly attempted to comply with the Court's unrecorded order to return Plaintiff's firearms by supplying Plaintiff with the Long Gun Review Record to be filed with the NCPD. The County Defendants never opted to act in contravention to the Court's Return Order.

As to the second prong, a party seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense. *Enron,* 10 F.3d at 98. A party's defense may be deemed meritorious for default purposes if the defense raises a significant issue; a party need not establish the merits of the defense conclusively. *Marziliano,* 728 F.2d at 156.

The County Defendants maintain a meritorious defense in that, even while the County Defendants engaged in a good faith process to file the Long Gun Review Record, the Court could not provide the parties with the precise basis of the Return Order, the supposed recently enacted New York State law which required the return of Plaintiff's firearms. The lack of the

specific provision compelling the return of the firearms presents a significant issue in that the NCPD cannot return firearms without proper authority or impetus to do so. Moreover, the Return Order was never written or recorded anywhere. *See Decl. of Stephen Carlin.*

As to the third prong, if the County Defendants' application for relief is granted, Plaintiff will not be prejudiced. The crux of the Return Order was for the County Defendants to return Plaintiff's firearms. However, Plaintiff had not even demanded the return of the firearms as an element of relief in the Complaint [DE 1 p. 72-73]. Nor has Plaintiff filed any motions for injunctive relief for the return of his firearms. If the County Defendants' instant cross-motion for relief is granted, Plaintiff will not have suffered any additional loss.

Furthermore, the instant cross-motion is timely filed, as Fed. R. Civ. P. 60 (c) (1) states: "A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." The oral Contempt Order and Order striking County Defendants' Answer were made on March 10, 2020. The instant cross-motion is made within 45 days of said Orders.

## II.     THE CONTEMPT ORDER SHOULD BE VACATED

The power of a district court to impose contempt liability is carefully limited. *CBS Broadcasting Inc. v FilmOn.com, Inc.,* 814 F3d 91, 98 [2d Cir. 2016]. The contempt power serves to "protect[ ] the due and orderly administration of justice and [to] maintain[ ] the authority and dignity of the court." Id. *citing Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). A court may hold a party in contempt if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner. *Paramedics Electromedicina Comercial, Ltd. v. GE Med. Sys. Info. Techs., Inc*., 369 F.3d 645,

655 (2d Cir.2004). Notably, the burden of proof to establish the elements of contempt is on the movant. *Perez v. Danbury Hospital,* 347 F. 3d 419, 423-424 (2d Cir. 1995) quoting *King v. Allied Vision Ltd.*, 65 F. 3d 1051, 1058 (2d Cir. 1995). An analysis of the three factors demonstrate that the County Defendants should not have been held in contempt in the first place.

First, the order was far from clear and unambiguous. As set forth in the accompanying declaration of Deputy County Attorney Stephen Carlin, the Order to return the Plaintiff's firearms was made, not in response to a motion made by Plaintiff on notice, but by the Court *sua sponte*. Plaintiff had not even demanded the return of the firearms as an element of relief in the Complaint [DE 1 p. 72-73]. In the course of issuing the directive the Court referred to a newly enacted New York State law which presumably governed the return of firearms; however, the Court did not supply counsel with a citation to the law and even Plaintiff's counsel expressed unfamiliarity with the law.

Notably, New York did recently enact a new Article 63-a of the Civil Practice Law and Rules entitled Extreme Risk Protection Orders (ERPO) which sets forth a hearing procedure for the removal of weapons from a person that, among other things, has made threats of violence or brandished a weapon in an unsafe manner. See, CPLR 6342 (2)(a)-(g). In addition, the law also provides for a notice and hearing procedure for the return of the weapons when the ERPO expires. However, in this case, at the time of the seizure of the firearms on July 19, 2016, Article 63-a had not been enacted and it is thus inapplicable to the seizure of the firearms from Plaintiff. Alternatively, if the Court is referring to another law, the Return Order is ambiguous as to the basis for ordering the immediate return of the firearms.

Here, Plaintiff's firearms were surrendered incident to his arrest for brandishing a weapon. Under New York's SAFE Act (Penal Law § 265) and Penal Law §400.00(11), when a

licensee becomes "ineligible" for a pistol license, he is required to surrender his pistol license and "all firearms, rifles, and shotguns...to an appropriate law enforcement agency". Penal Law 400.00(11)(c). A licensee is "ineligible" for a pistol license if "good cause exists" for the suspension/revocation of a pistol license.

This Court and the Second Circuit have upheld the constitutionality of Penal Law 400.00 (11). In *Weinstein v. Krumpter,* 386 F.Supp.3d 220 (E.D.N.Y. 2019), the Honorable Judge Arthur D. Spatt applied intermediate scrutiny to examine whether Penal Law § 400.00(11) was substantially related to the pertinent government interests, and whether there was a reasonable fit between the law and the stated objective. Avitabile v. Beach, 277 F. Supp. 3d 326, 334 (N.D.N.Y. 2017) ("[D]istrict courts in this Circuit have continually chosen to apply 'intermediate scrutiny to general challenges under the Second Amendment, even when reviewing statutes or laws that may restrict the possession of [weapons] in the home.' " (quoting Maloney v. Singas, 106 F. Supp. 3d 300, 311 (E.D.N.Y. 2015))). New York State has a legitimate interest in ensuring public safety, preventing crime, and confirming that only law-abiding, responsible individuals possess handguns to defend their person and property. See *Pelose v. Cty. Court of Westchester Cty.*, 53 A.D.2d 645, 384 N.Y.S.2d 499, 500 (2d Dept. 1976) ("[New York] State has a substantial and legitimate interest and indeed, a grave responsibility, in insuring the safety of the general public from individuals who, by their conduct, have shown themselves to be lacking the essential temperament or character which should be present in one entrusted with a dangerous instrument.").

Judge Spatt ruled in favor of the defendants and stated "[T]his Court agrees with the district courts in this Circuit that have previously found that there is no constitutional right to a handgun license in New York State. See *Toussaint v. City of New York*, No. 17-CV-5576, 2018

WL 4288637, at *7 (E.D.N.Y. Sept. 7, 2018) (dismissing case because the plaintiff "cannot show that he has a protected liberty or property interest in a 'possible future [handgun] license'" (quoting Spinelli v. City of New York, 579 F.3d 160, 169 (2d Cir. 2009))); Perros v. Cty. of Nassau, 238 F. Supp. 3d 395, 401 (E.D.N.Y. 2017) ("Under New York law, it is well-settled that the possession of a handgun license is a privilege, not a right." (internal citations omitted)). The challenged law substantially relates to the pertinent government objective of limiting the possession of handguns to law abiding, responsible individuals and there is a reasonable fit between the objective and the law. See Libertarian Party of Erie Cty. v. Cuomo, 300 F. Supp. 3d 424, 443 (W.D.N.Y. 2018); *Toussaint*, 2018 WL 4288637, at *6; Aron, 48 F. Supp. 3d at 334; *Mishtaku v. City of New York*, No. 14-cv-839, 2015 WL 13002182, at *5 (S.D.N.Y. May 4, 2015) (collecting cases). *Weinstein*, 386 F.Supp.3d at 232.

Brandishing a weapon is a violation of the terms of Plaintiff's pistol license (improper use/public display of a firearm) which authorizes the Department to confiscate weapons and provide the individual the opportunity to request their return (via the Long Gun Return form). See, Exhibit A. However, prior to submitting the Long Gun Return form via email on February 24, 2020 – after the Return Order had been issued – Plaintiff had never sought the return of his firearms from the Department. Moreover, Plaintiff had never made an application to the Court to amend his complaint for a mandatory injunction compelling the return of the firearms. Indeed, such a motion would have been denied as moot because Plaintiff had not exhausted his administrative remedy of applying to the Department for the return of the firearms in the first place.

Second, the proof of non-compliance is not clear and convincing. The Court did not give the County an opportunity to demonstrate that it was in the process of complying with the Return

Order and had taken steps toward compliance by providing Plaintiff with the application for the return of the weapons and was awaiting Plaintiff's submission of the original application pursuant to standard procedures ( See Carlin Declaration at ¶ 8 and Exhibits A, B, and C). For the same reason, the County Defendants clearly attempted to comply with the Return Order by supplying Plaintiff with the Long Gun Return Form and instructing Plaintiff as to how the application should be submitted. Therefore, based on the foregoing, the Contempt Order should be vacated.

### III. THE SANCTION IMPOSED WAS CRIMINAL IN NATURE REQUIRING A TRIAL BEFORE IMPOSITION

A district court cannot impose criminal sanctions without affording a defendant the constitutional procedural protections of a jury trial. *Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 837–38, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994)

The nature of a contempt "turns on the character and purpose of the sanction" issued in response to the contemptuous conduct. *New York State Nat'l Org. for Women v. Terry,* 159 F.3d 86, 93 (2d Cir.1998). Criminal sanctions "are intended primarily to punish the contemnor and vindicate the authority of the court." *Id.* Civil sanctions have two purposes: to coerce compliance with a court order and to compensate a plaintiff. *Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.,* 478 U.S. 421, 443, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986)

A sanction coerces a defendant when it "force[s] the contemnor to conform his conduct to the court's order." *Terry,* 159 F.3d at 93. Where, as here, a sanction does not compensate the party for an injury caused by the contemptuous act, a sanction is civil only if its purpose is to coerce the contemnor into compliance. *Id.* at 95

In *Bagwell,* the Supreme Court delineated the nature of coercion in civil contempts and determined that a hallmark of coercive sanctions was that "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus 'carries the keys of his prison in his own pocket.' " 512 U.S. at 828, 114 S.Ct. 2552 (quoting *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 442, 31 S.Ct. 492, 55 L.Ed. 797 (1911)). An opportunity to purge is essential; "[t]hus a flat, unconditional fine totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Id.* at 829, 114 S.Ct. 2552. "[A] noncompensatory fine is civil, and thus may ordinarily be imposed in the absence of a criminal trial only if the contemnor is afforded an opportunity to purge." *People v. Operation Rescue Nat'l,* 80 F.3d 64, 68 n. 7 (2d Cir.1996) (internal quotation omitted).

"Since *Bagwell,* other courts have applied the opportunity to purge requirement to serial contemnors. In situations similar to the facts in this case—where there is an initial injunction, the injunction was violated, there was a subsequent contempt order that outlined a future *per diem* fee schedule for further violations, there was a subsequent violation of the injunction, and then the contemptuous conduct was purged before the parties appeared before the court—courts have recognized that previous court orders afforded the defendant an opportunity to purge before entry of the contempt order in dispute." *See Salazar ex rel. Salazar v. District of Columbia,* 602 F.3d 431, 438 (D.C.Cir.2010) ("*Salazar* "); *NLRB v. Ironworkers Local 433,* 169 F.3d 1217, 1221 (9th Cir.1999) ("*Local 433* ").[6] Within this context, a court's sanction does not become criminal even if the court does not afford the party an additional opportunity to purge because the sanctions were "prompted by [the] party's previous failure to purge." *Local 433,* 169 F.3d at 1221. To hold otherwise would negate the coercive purpose of prospective fee schedules, and "compliance with

laws or orders could never be brought about by fines in civil contempt proceedings." *Id.* (quotation omitted). Recognizing that repeated findings of contempt, with proper notice of daily prospective fees, provides the defendant with an adequate opportunity to purge comports with *Bagwell* 's underlying concern of protecting "the due process rights of parties and prevent[ing] the arbitrary exercise of judicial power." *Bagwell,* 512 U.S at 834, 114 S.Ct. 2552.

Additional factors illuminate the punitive or coercive nature of sanctions and highlight the concerns connected to a court's exercise of its inherent contempt authority. The sheer size of the sanction is indicative of whether the sanction is intended to punish or to coerce a contemnor and whether there is a "need for the protection of the defendant in the adjudication process." *Terry,* 159 F.3d at 94. Further, a district court's civil contempt power waxes when the contemptuous act occurs in its presence and wanes when the act occurs outside of court. *Bagwell,* 512 U.S. at 833–34, 114 S.Ct. 2552. The dangers related to the abuse of judicial authority are of particular concern when the contempt involves "out-of-court disobedience to complex injunctions [because they] often require elaborate and reliable factfinding." *Id.* When the contempt involves a simple disobedient act, however, the "risk of [an] erroneous deprivation from the lack of a neutral factfinder" is diminished, and a court's ability to exercise its inherent civil contempt power is amplified. *Id.* at 834, 114 S.Ct. 2552. Determining the purpose of a sanction is a fact-specific inquiry that must be understood in the context of each individual case. *See Terry,* 159 F.3d at 94 (analyzing the purpose of sanctions "in the context of this case").

In the instant case, the contempt order was criminal in nature as it led to the striking of County Defendants' answer after failure to return Plaintiff's firearms within 30 days after the February 4, 2020 conference. However, as stated previously, the Return Order was issued off the record nor transcribed by a court reporter. Furthermore, the legal basis for the Court's Return

Order was not specifically provided, and neither party was familiar with such law the Court referenced. Despite these facts, the County Defendants endeavored to initiate the process of returning Plaintiff's firearms by providing him with the Long Gun Review form. The Contempt Order appears in nature to have been punishment for the County Defendant's failure to comply with an off the record order without a proper legal basis.

Additionally, the County Defendants did not have an opportunity to purge its contemptuous conduct. The County Defendants were held in contempt at the March 10, 2020 conference. *Carlin Decl.* at ¶ 8. Immediately following the contempt Order, the Court granted Plaintiff's oral application at the same conference to strike the County Defendants' answer. *Id*. At no point following the contempt order were the County Defendants permitted an opportunity to purge the contemptuous conduct.

## CONCLUSION

Based on the foregoing reasons, County Defendants respectfully request that an Order be issued granting the County Defendants' cross-motion for relief pursuant to Fed. R. Civ. P. 60(b), denying Plaintiff's application for default judgment, and along with such other and further relief as the court deems just and proper.


Dated: Mineola, New York
      April 20, 2020

                                    /s/ *Stephen Carlin*
                                    Stephen Carlin
                                    Deputy County Attorney