UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CARL T. SEMENCIC,

       Plaintiff,

-against-                Civil Action No.
                     2:18-cv-05244-SJF-AKT

THE COUNTY OF NASSAU;
THE NASSAU COUNTY POLICE DEPARTMENT;
COMMISSIONER PATRICK J. RYDER, individually
and officially; POLICE OFFICER ROBERT B.
McGRORY, individually and officially;
POLICE OFFICER KENNETH J. MAGNUSON,
Individually and officially; JOHN DOE #1, individually
and officially; THE FRANKLIN SQUARE AND
MUNSON FIRE DEPARTMENT;
DANIEL MALONEY, individually;
ROBERT FINEO, individually; and
JOHN DOE #2, individually,

       Defendants.
----------------------------------------------------------------X

## AFFIDAVIT OF CARL T. SEMENCIC

**CARL T. SEMENCIC**, after being duly sworn and pursuant to the penalties of perjury, hereby states the following to be true:

  1.  My name is Carl T. Semencic, and I am the Plaintiff in the above-captioned action. I am over the age of eighteen (18) and believe in the nature of an oath.

  2.  I am personally familiar with the facts of this case based on my extensive and direct involvement in the same. The facts recited herein derive directly from my first-hand personal experience and knowledge.

  3.  I submit this Affidavit in support of my Application for Issuance of Default Judgment, and in opposition to the County Defendants' Cross-Motion to Vacate the Court's

contempt finding and its' striking of their Answer.

4. I was arrested in my home on July 19, 2016 by employees of the County Defendants. At the time, I possessed a valid Nassau County firearms permit, and legally possessed several handguns and long arms in my house. During the arrest, I was forcibly and excessively restrained, my home was searched, and all of my firearms were seized. True, complete and accurate copies of property vouchers evidencing all of the property confiscated from my home on July 19, 2016 are attached here as **"Exhibit A."**

5. All told, the County Defendants confiscated twenty (20) firearms from my home on July 19, 2016. I've owned these firearms for decades, and the majority for more than thirty (30) years. Each of them has a story attached to it, and many of them are irreplaceable. This is not just a sentimental statement: many of the guns are out of production and haven't been made in a long, long time.

6. Exactly to this point, many of my arms are described on the property vouchers as "Unk. Make." This is because they are replicas of rare and unique firearms, and of great personal value. I enjoy shooting these firearms the same way civil war buffs enjoy historical reenactments. In many instances, I acquired these pieces not because they are particularly accurate or powerful, but because they represent pieces of stylistic history.

7. For example, the "Old Arm Ruger" listed as firearm #1 on page one of the property voucher is my Ruger Old Army pistol. It's not a modern handgun but a black powder muzzle loader. I've been a muzzle loader enthusiast for most of my life, and this is a classic piece of equipment. It was the handgun that prompted me to get my handgun permit in 1989.

8. The rifle described as "Unk. Make S#BL0074" (firearm #2 on page one of

the property voucher) is a no-longer-available replica of a gun from the early 1800s that I have owned for decades just for its historic significance.

9. The "J&S Hawkin" described as firearm #3 on page one of the property voucher is an exact replica of the kind of gun fur traders in the Rocky Mountains in the early 1800s would have carried. The originals were made by the Hawken Brothers in St. Louis Missouri, but my replica was made by Davide Pedersoli of Gardone val Trompia, Italy. I shot this gun occasionally, but I truly value it as an historical piece.

10. The firearm described as gun #5 on page two of the property voucher is my Connecticut Valley Arms ("CVA") Hawken Replica. Not only are they no longer available, but CVA no longer makes any traditional muzzle loaders. This gun is extremely accurate, sporting a very well-made Spanish barrel. I loved shooting this rifle and, when shooting in competition, this is the gun I always used. I've owned it for at least 30 years.

11. The firearm described as gun #3 on page three of the property voucher is my October Country muzzle loading rifle. I paid a significant amount of money for this rifle many years ago. It is no longer produced and hasn't been made for decades. It was a rifle that prompted big interest among traditionalists and is considered the ultimate hunting musket.

12. The firearm described as gun #4 on page three of the property voucher is an old muzzle loading military rifle given to me by Val Forgett more than 30 years ago, new and in the box. Val has been gone a long time, and I still have an autographed copy of one of his books on my shelf. This rifle is priceless and irreplaceable.

13. The firearm described as gun #5 on page three of the property voucher is another that I spent a great deal of time and money setting up for hunting. Like so many

of my gun, this has not been made for a long time. It, too, is irreplaceable.

14. The firearm described as gun #5 on page three of the property voucher is a Garner muzzle loader that was custom built for me by Jack Garner of Corinth, Mississippi about 35 years ago, at significant cost. It is irreplaceable.

15. The firearm described as gun #5 on page three of the property voucher is, perhaps, my most valuable. I bought it in the spring of 1975 at a Western Auto store in Hartsville, Tennessee, while working on an archaeological project. I'd gotten friendly with family who lived in a cabin nearby and the patriarch, Henry, hunted rabbits and fowl every day. Henry eventually asked me if I wanted to go hunting with him, so I bought this shotgun for $20 just to be part of Henry's hunt. We never fired a shot at the rabbits. If you offered me a thousand dollars today for this gun, I'd say no.

16. The firearm described as gun #3 on page four the property voucher is my .54 caliber Lyman muzzle loader. It has been heavily customized at great personal expense. This piece is so important to me that I cannot assign a monetary value to it.

17. I was subsequently charged in the Nassau County District Court with the crimes of Menacing in the Second Degree (in violation of New York Penal Law § 120.14(1)) and Criminal Possession of a Weapon in the Fourth Degree (*i.e.,* possession of a dangerous weapon with intent to use the same unlawfully against another) (in violation of New York Penal Law § 265.01(2)). *See People of the State of New York v Carl Semencic*, Docket No. 2016NA020473.

18. My criminal prosecution lasted from August 11, 2016 until May 21, 2018. During this time, I was forced to retain the services of criminal defense attorney Frederick K. Brewington, prepare a legal defense and make dozens of appearances with Mr.

Brewington in the Nassau County District Court in order to defend myself. A true, complete and accurate copy of the retainer agreement I executed with the Law Office of Frederick K. Brewington has already been submitted to the Court. *See* ECF Doc. # 53-2.

19. I expended significant amounts of time and expense during the course of my criminal prosecution. True, complete and accurate copies of the invoices for legal fees and expenses I paid to attorney Brewington for the services he rendered in *People of the State of New York v Carl Semencic*, Docket No. 2016NA020473, have already been submitted to the Court. See ECF Doc. # 53-3.

20. All told, I incurred and paid legal fees to the Law Office of Frederick K. Brewington in the amount of forty-one thousand four hundred thirty-seven dollars and forty-five cents ($41,437.45).

21. On or about May 21, 2018 the criminal proceedings against me were terminated when all criminal charges against me were dismissed on the motions of Mr. Brewington.

22. The assertion made by the County Attorneys that I have never requested that they return the property they confiscated from me is simply not true.

23. In truth, I have made two (2) requests that the County Defendants return my property to me. Both of those requests have been ignored.

24. On April 24, 2017, attorney Frederick Brewington, acting on my behalf and with my express consent and authority, hand-delivered a written demand for the return of my muskets to the County Defendants. A true, complete and accurate copy of attorney Brewington's letter is attached here as **"Exhibit B."** The County Defendants never responded to this letter.

25. On May 29, 2018, I personally wrote and hand-delivered a letter to the County Defendants requesting that my firearms be returned and inquiring as to the specific steps I needed to take to retrieve my firearms. A true, complete and accurate copy of my letter to the County Defendants is attached here as "**Exhibit C**."

26. This letter was also ignored by the County Defendants. To this day, they have yet to respond to it.

27. I have reviewed the foregoing statements and they are all true, complete and accurate according to the best of my knowledge, information and belief.

Dated: May 1, 2020

_____
CARL T. SEMENCIC

Sworn to before me this 1st day of May, 2020.

_____
NOTARY PUBLIC

BRIAN THOMAS STAPLETON
Notary Public, State of New York
No. 02ST6118062
Qualified in Westchester County
My Commission Expires 4/1/2022