# United States District Court
# Eastern District Of New York

------------------------------------------------------------------x

CARL SEMENCIC,                                          18-CV-05244 (NRM)(AYS)

                          Plaintiff,

    *-against-*

THE COUNTY OF NASSAU,
POLICE OFFICER ROBERT B. McGRORY and
POLICE OFFICER KENNETH J. MAGNUSON,

                          Defendants.

------------------------------------------------------------------x


### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
### OF ITS MOTION TO ALTER/AMEND A JUDGMENT
### PURSUANT TO RULE 59(e) F.R.Civ.Pro


**THOMAS A. ADAMS**
**NASSAU COUNTY ATTORNEY**
**OFFICE OF THE NASSAU COUNTY ATTORNEY**
**516-571-1799**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT …………………………………………...…………………… 1

STATEMENT OF FACTS …………………………………………………...……………… 1

The Jury Verdict ……………………………………………………………………… 4

Summary of Arguments ……………………………………………………………… 4

Legal Standard – Rule 59 …………………………………….………………………... 6

ARGUMENT ……………………………………………………...…………………….. 8

I. SINCE THE JURY FOUND NO FEDERAL LAW LIABILITY FOR FALSE ARREST, BASED ON THE COURT'S CLEAR JURY INSTRUCTION, THE JURY WAS PRECLUDED FROM FINDING DEFENDANTS LIABLE FOR STATE LAW FALSE ARREST…..……. 8

II. THIS COURT'S ORAL INSTRUCTIONS CONFLICTED WITH THE WRITTEN INSTRUCTIONS PROVIDED TO THE JURY …………………...…………………….. 9

III. A FINDING OF LIABILITY FOR STATE LAW FALSE ARREST COMPELLED THE JURY TO ALSO FIND DEFENDANTS LIABLE FOR STATE LAW BATTERY……...…….10

IV. IF THE COURT PERMITS THE VERDICT TO STAND, THE COMPENSATORY DAMAGES ARE EXCESSIVE AND MUST BE REDUCED.………………………...…….12

CONCLUSION …………………………………...………………………………………. 18

# TABLE OF AUTHORITIES

**Cases**

• *Ashley v. City of New York*, 992 F.3d 128 (2d Cir. 2021) …………………………..……… 5, 8

• *Bellinger v. Matt*, 2015 Jury Verdicts LEXIS 3138 (Sup. Ct. Lawrence Cnty. 2015) ……..…16

• *Betts v. Shearman*, 751 F.3d 78 (2d Cir. 2014) ……………………………………….......... 6

• *Charkhy v. Altman*, 252 A.D.2d 413 (1st Dep't 1998) ………………………….……………10

• *City of Hartford v. Chase*, 942 F.2d 130, 133-34 (2d Cir. 1991) ……………………………. 7

• *Colburn Family Found. v. Chabad's Children*, 2013 U.S. Dist. LEXIS 20594 (S.D.N.Y. July 10, 2013) ……………………………………………………………………..…….. 6

• *Crawford v. NYC Transit Auth.*, 2006 Jury Verdicts LEXIS 43692 (N.Y. Sup. Ct. Queens Cnty. 2006) ……………….……..…………………………………...16

• *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124 (2d Cir. 1998) …………….……… 4, 7

• *Girden v. Sandals Int'l*, 262 F.3d 195 (2d Cir. 2001) ………………………………….……... 10

• *Guzman v. Jay*, 303 F.R.D. 186 (S.D.N.Y. 2014) ……………………………………… 12

• *Jarvis v. Ford Motor Co.*, 283 F.3d 33 (2d Cir. 2002) …………………………………… 8

• *Jenkins v. City of New York*, 478 F.3d 76, 88 n.10 (2d Cir. 2007) …………………………… 11

• *Lennon v. Miller*, 66 F.3d 416 (2d Cir. 1995) ………………………………………..……… 8

• *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133 (2d Cir. 2020) ………..... 5, 7

• *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99 (2d Cir. 2004) ……………………………… 4, 5, 7

• *Nasser Saber v. NY State Dep't of Fin. Servs.*, 2018 U.S. Dist. LEXIS 121811 (S.D.N.Y. July 20, 2018)…………………………………………………..………… 12

• *Negron v. Lopez*, 2019 Jury Verdicts LEXIS 64325 (N.Y. Sup. Ct. Kings Cnty. 2019)……….17

• *Newton v. City of NY*, 171 F. Supp. 3d 156 (S.D.N.Y. 2016) …………………………..……… 12

• *Posr v. Doherty*, 944 F.2d 91 (2d Cir. 1991) …………………………………………..………… 8

• *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411 (2d Cir. 2014) ……………………………… 6

• *Robbason v. Dixon*, 2020 Jury Verdicts LEXIS 381079 (N.Y. Sup. Ct. Kings Cnty. 2020)....15

• *Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003) ……………………...……..…….11

• *Shade v. Housing Auth. of New Haven*, 251 F.3d 307 (2d Cir. 2001) ……………...…….…8

• *Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995) …………………………….…8

• *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105 (2d Cir. 1993)………10

• *Wallace v. Kato*, 549 U.S. 384, 388 (2007) …………………………………………....11

• *Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996) …………………………………….... 8, 11

• *Yanez v. The City of New York*, 29 F. Supp. 2d 100 (E.D.N.Y. 1998) ……………....……10

**Secondary Authorities**

• C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure* § 3950 (1977) …………………………………………………………………………………. 7

• 11 Wright & Miller, *Federal Practice and Procedure* § 2810.1 (3d ed. 2024) ……………. 5, 7

• 12 Moore's *Federal Practice* § 59.30[5][a][i] (3d ed. 2024) ………………..……………. 5, 7

**Statutes and Rules**

• 42 U.S.C. § 1983……………………………………………………………. 8, 10, 11

• Fed. R. Civ. P. 59(e) ……………………………………………………………………. 6

**PRELIMINARY STATEMENT**

Defendants, County of Nassau, Robert B. McGrory, and Kenneth J. Magnuson respectfully submit this Memorandum of Law in support of their motion pursuant to Fed. R. Civ. P. 59(e) for an order altering or amending the jury verdict rendered by the jury on March 4, 2025, and dismissing all defendants from this action, together with all such other and further relief as the Court deems just and proper.

**STATEMENT OF FACTS**

Plaintiff Carl Semencic ("plaintiff") commenced this action by filing his Complaint on September 18, 2018. In the Complaint, plaintiff claimed that on July 19, 2016, he resided at 527 Dogwood Avenue, West Hempstead, New York. At approximately 8:00 p.m., while plaintiff was home, volunteer firefighter Daniel Maloney of the Franklin Square Munson Fire Department knocked on plaintiff's front door in an effort to solicit financial contributions for the Fire Department. (Tr.482, L. 22-483, L.7).   Maloney testified that he stated he was a member of the Franklin Square Fire Department asking for donations. (Tr. 483, L. 3). Maloney testified he was wearing an official Fire Department shirt and cap and had his picture identification card hanging from his neck. (Tr. 517, L. 15-20). He knocked on the front door of 527 Dogwood Ave. West Hempstead and a female opened the door. Before she said anything in response to what Maloney had said, she was pushed out of the way, (Tr. 485 L. 9-12), (Tr.519, L. 15-22) (Tr.522, L. 5-12) by Carl Semencic who was wearing a dark colored tee shirt, grey shorts, and glasses. Plaintiff Semencic was holding a black handgun in his left hand and pointed it at a sign on the front glass door that read "Do not knock no peddlers" and stated, "go away."( Tr. 486, L. 7-11) . Maloney responded "that's not necessary" as Semencic again pointed the gun at the sign and tapped on it and said: "Go away."(Tr. 486, L. 12-20). Maloney testified that he was in fear of his life and backed

away from the door with his two hands in the air. (Tr. 486, L.17-20). (Tr. 489, L. 19-24), (Tr. 521, L. 21-24). When Maloney reached the sidewalk, he called the Fire Captain on his radio and informed him that a man just pulled a gun on him. (Tr.490, L. 12-17) (Tr. 492, L. 5-7). The Captain relayed the message to the Fire Chief who in turn called the Nassau County Police.

Shortly thereafter, Officers McGrory and Magnuson arrived in the vicinity of the plaintiff's house and spoke with Maloney (Tr. 598, L. 13-21). and his Chief, Robert Fineo. (Tr. 525, L. 20-24;). Initially, after approaching the Plaintiff's house, the Officers knocked, and Plaintiff exited the house and was placed sitting on a bench in front of the house. (Tr. 605, L. 4- 20). Together with Officer McGrory, Magnuson conducted a "show-up" wherein Maloney was placed in a police car and driven past the Plaintiff's house, where the Plaintiff was seated on the porch bench, with police officers standing next to him. Maloney positively identified the Plaintiff as the man who pulled the gun on him. (Tr. 607, L. 23 – 608, L. 7) After being identified, plaintiff was walked down to the unmarked police car and placed in handcuffs. (Tr. 609, L. 24 610, L. 13) (Tr. 675, L. 3-5). The Plaintiff was arrested outside of his house. (Tr. 688, L. 13-18). While he was seated in the police car, plaintiff volunteered that he, plaintiff, had the handgun and where it was located. (Tr.611, L.19-24; 612, L.10-14).) Later the plaintiff told the police that he had other firearms (Tr. 612, L.20-25). Plaintiff said the other firearms were in a safe in his basement. (Tr. 613, L.1-10). The decision to take the firearms from the basement safe was made by Sergeant Aljadar. (Tr. 616, L. 10-19) (Tr. 678, L. 1-2). Plaintiff Semencic consented to a search of the safe. (Tr. 698, L. 6-7). Plaintiff voluntarily gave the officers the combination to his safe, in which other firearms were located. (Tr.620, L. 2- 7) (Tr. 679, L. 4-5). When the Police were unable to open the safe even with the combination that Plaintiff had volunteered, Semencic then offered to and did open the safe himself in the presence of the police. (Tr.632, L.18-20)

(Tr.633, L.2-5, L.20-21). The large safe in the basement contained approximately twenty (20) additional firearms.

Pursuant to the order of Sgt. Aljadar, who had arrived on the scene, plaintiff's firearms were confiscated and invoiced. One of the officers, Officer Muller, retrieved a Glock handgun out of plaintiff's nightstand.

Plaintiff was transported to the Fifth Precinct for arrest processing. At the Fifth Precinct plaintiff Semencic informed the Police Officers that he was not injured (Tr.638, L.5-15) and was later issued a Desk Appearance Ticket (Tr. 638, L.21-24), charging him with Menacing in the Second Degree in violation of New York Penal Law § 120.14(1) and Possession of a Dangerous Weapon in the Fourth Degree in violation of Penal Law § 265.01(2).

Plaintiff moved in the criminal action seeking, *inter alia,* an order dismissing the information as defective.  By order dated July 5, 2017, the state court granted the motion in part, finding that the weapons possession count was "facially defective" because the District Attorney had not alleged that the Glock was operable. The state court rejected plaintiff's motion to dismiss the menacing count, however, noting that "a homeowner is not immune from prosecution for his or her conduct simply because it occurs on his or her premises," and concluding that the prosecution had demonstrated the existence of a prima facie case of menacing. On May 21, 2018, the remaining claim for menacing was dismissed on plaintiff's motion to dismiss pursuant to CPL § 30.30(1) for the Nassau County District Attorney's Office failure to commence the criminal trial within the statutory time limits set forth in the New York Penal Code.

Plaintiff's federal District Court Complaint asserted fifteen (15) causes of action. Following completion of discovery, plaintiff withdrew all of his claims, except for those claims which proceeded to trial, namely, separate federal and state law claims for Use of Excessive Force;

separate federal and state law claims for False Arrest; separate federal and state law claims for Unlawful Search and Seizure; one state law claim for Assault; one state law claim for Battery; one state law claim for Malicious Prosecution; and one state law claim for Abuse Of Process.

**The Jury Verdict**

In rendering its verdict, the jury found as follows:

- While Officers McGrory and Magnuson were found *not liable for federal* false arrest, the jury inexplicably found both officers *liable for state law* false arrest even though the elements of federal false law are the same as this Court stated in its instructions to the Jury, as the elements of state law false arrest.

- Officers McGrory and Magnuson were found liable for state law battery since this Court instructed the Jury that: "If you find that the plaintiff has proven that he was falsely arrested, you must find that the plaintiff has also proven his battery claim." (Tr. 885 L.25 – 886 L.1-2)

- Officers McGrory and Magnuson were found not liable for federal use of excessive force.

- Officers McGrory and Magnuson were found not liable for federal unlawful search and seizure.

- Officers McGrory and Magnuson were found not liable for state law assault.

- Officers McGrory and Magnuson were found not liable for state law malicious prosecution.

- Officers McGrory and Magnuson were found not liable for state law abuse of process.

**Summary of Arguments**

1. The liability verdicts by this Jury on Questions 8 and 9 (State Battery and State False Arrest) make no sense and are contrary to this Court's Instruction on the Law in one case (Question 9) which resulted in the Jury being mandated to find liability for the State Battery charge (Question 8) for which there was no supporting trial evidence. This Court should alter or amend the verdict to correct a clear error of law or prevent manifest injustice. The verdicts on Questions 8 and 9

present a fundamental error and they are egregiously wrong. *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004); *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998); *Metzler Investment GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020); *see generally* 11 Wright & Miller, *Federal Practice and Procedure* § 2810.1 (3d ed. 2024); 12 *Moore's Federal Practice* § 59.30[5][a][i] (3d ed. 2024).

As stated above, Officers McGrory and Magnuson were found *not liable for federal* false arrest but despite this Court's Instruction that in that event, they did not have to answer Question 9 or they could enter a no liability verdict, the jury did the unthinkable and found *liability for state law* false arrest. Since claims for false arrest brought under Section 1983 *are the same as claims for false arrest under state law*. *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021), the verdict is a clear error of law and a manifest injustice. "District Courts may alter or amend [a] judgment to correct a clear error of law or prevent manifest injustice." *Munafo*, 381 F.3d 99, 105 (2d Cir. 2004). The verdict proves beyond any doubt that the jury either misunderstood or deliberately disregarded the Court's clear jury instruction that if the jury were to find no *federal law* false arrest, the jury was then *precluded* from making a finding of *state law* false arrest. This illogical result, which is contrary to this Court's instruction, constitutes clear error, and is a manifest injustice.

2. The verdict finding McGrory and Magnuson liable for state law battery was based on this Court's instruction that a finding of liability for state law false arrest *required* the jury to find liability on the state law battery claim. The Court's instruction forced the jury to issue a null and void verdict. That verdict to Question 8 is therefore a clear error of law; a manifest injustice; constituting fundamental error.

3. The verdicts of liability rendered on Questions 8 and 9 are against the weight of evidence.

Second Circuit precedent is clear that a decision is against the weight of the evidence if the verdict is (1) seriously erroneous or (2) a miscarriage of justice. Due to the jury's misunderstanding or deliberate disregard of the Court's instruction, that a finding of no false arrest under *federal law* precluded a subsequent finding of false arrest under *state law,* the verdict is both seriously erroneous and is a miscarriage of justice. *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417-418 (2d Cir. 2014).

4. The trial testimony of firefighter Daniel Maloney that plaintiff Semencic appeared at the front door holding a handgun which caused Maloney to fear for his life, provided sufficient probable cause for Magnuson and McGrory to arrest plaintiff. This Jury found that probable cause, because they found no liability for the Federal False Arrest claim. Probable cause is a complete defense to a constitutional claim of false arrest. *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). Maloney's trial testimony, clearly accepted by the Jury, provided sufficient probable cause for plaintiff to be arrested.

Apart from the clear error finding both officers liable for state law false arrest after the Court instructed the jury that it was *precluded* from finding liability state law false arrest, the verdict of liability on the state law false arrest claim is fundamentally wrong, seriously erroneous and is a miscarriage of justice.

## Legal Standard - Rule 59

Rule 59, "New Trial; Altering or Amending a Judgment" provides:

> (e) Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

Motions to reconsider, motions for rehearing, motions to reargue, motions to vacate, and motions to set aside the judgment are all treated as motions to alter or amend judgment under

Federal Rule 59(e). *Colburn Family Found. v. Chabad's Children*, No. 06-CV-2351 (RMB), 2013 U.S. Dist. LEXIS 20594 at *5 (S.D.N.Y. July 10, 2013) (citing *City of Hartford v. Chase*, 942 F.2d 130, 133-34 (2d Cir. 1991). "Although Rule 59(e) does not prescribe specific grounds for granting a motion to alter or amend an otherwise final judgment... district courts may alter or amend [a] judgment 'to correct a clear error of law or prevent manifest injustice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir 2004) (internal citation omitted).

"Any kind of motion that draws into question the correctness of the district court judgment is considered to be a motion 'to alter or amend the judgment under Civil Rule 59(e). Such a motion may variously be styled a motion to reconsider, a motion for rehearing, a motion to reargue, a motion to vacate, or a motion to set aside the judgment." *City of Hartford v. Chase*, 942 F.2d 130, 133-34 (2d Cir. 1991) (citing C. Wright, A. Miller, E. Cooper & E. Gressman, 16 *Federal Practice and Procedure* § 3950, at 364 n. 7 (1977). Such a motion should be granted "when the jury's verdict is egregious." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998).

Rule 59(e) allows a party, not later than 28 days after entry of a judgment, to make "[a] motion to alter or amend [the] judgment." Fed. R. Civ. P. 59(e). The court is authorized to grant a Rule 59(e) motion to alter or amend the judgment "when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or *the need to correct a clear error or prevent manifest injustice.*" *Metzler Investment GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020) (internal quotation marks omitted) (emphasis ours); *see generally* 11 Wright & Miller, *Federal Practice and Procedure* § 2810.1 (3d ed. 2024); 12 *Moore's Federal Practice* § 59.30[5][a][i] (3d ed. 2024).

Lastly, the concept of fundamental error is relevant here. "Fundamental error is more egregious than the 'plain' error that can excuse a procedural default in a . . . trial, . . . and is 'so serious and flagrant that it goes to the very integrity of the trial.'" *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 62 (2d Cir. 2002) (quoting *Shade v. Housing Auth. of New Haven*, 251 F.3d 307, 31[3] (2d Cir. 2001)).

## ARGUMENT

### POINT I

**SINCE THE JURY FOUND NO FEDERAL LAW LIABILITY FOR FALSE ARREST, BASED ON THE COURT'S CLEAR INSTRUCTION, THE JURY WAS PRECLUDED FROM FINDING DEFENDANTS LIABLE FOR STATE LAW FALSE ARREST**

The first intractable problem is the completely contradictory verdict which found that neither officer was found liable for *federal* false arrest, but that both officers were found liable for *state law* false arrest. This verdict of state law liability, despite the jury's prior finding that *neither officer was* liable for *federal false arrest,* shows that the jury either misunderstood, or deliberately disregarded, the following Jury Instruction:

> The Plaintiff's claim of false arrest under New York state law has the same elements as his claim of false arrest under federal law. ***Accordingly, you need not consider this* [*state law false arrest claim*] *separately*[.] If you find that plaintiff did not prove that either defendant is liable under Section 1983 for false arrest, nor that any other Nassau County police officer is liable for false arrest, *then you must find that the plaintiff has also not proven his state false arrest claim.* (Tr. 887, L. 1) (Ex. B, p.26). (Emphasis added)

It is black letter law that a federal §1983 false arrest claim, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, *see, e.g., Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995), is substantially the same as a claim for false arrest under New York law, *see, e.g. Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.

1996); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995); *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991). "Claims for false arrest brought under Section 1983 *are substantially the same as claims for false arrest under state law*." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021). (Emphasis added). Thus, the Court correctly instructed the jury if it found no *federal* false arrest liability, it *could not* at the same time render a verdict of *state law* false arrest.

Moreover, the verdict finding the officers liable for state law false arrest is against the weight of evidence and constitutes a miscarriage of justice. The only arresting officers were (1) Magnuson for the charge of Criminal Possession of a Weapon, *see* Pl. Ex. 15; Exhibit C) and (2) McGrory for the charge of Menacing in the Second Degree, *see* Pl. Ex. 16; Exhibit C). Since there was absolutely no trial testimony identifying any other Nassau County police officer as having arrested the plaintiff, the verdict finding of liability for a *state law false arrest*, while simultaneously absolving defendants of liability for *federal law false arrest*, is a clear fundamental error constituting a manifest injustice.

Unfortunately, that is exactly what the jury did. By either misunderstanding or deliberately disregarding the Court's clear instruction that a finding of no *federal law* liability for false arrest barred a finding of *state law* liability for false arrest, the verdict of state law false arrest is clearly erroneous and manifestly unjust. Thus, the state law false arrest verdict must be altered or amended to reflect no liability.

## POINT II

### THIS COURT'S ORAL INSTRUCTIONS CONFLICTED WITH THE WRITTEN INSTRUCTIONS PROVIDED TO THE JURY

This Court gave this jury opposite instructions regarding what they must do if the jury had decided that the plaintiff had NOT proven liability against the defendants with respect to the Federal 1983 claim for false arrest.

In its oral instructions to the Jury, this Court stated:

> "If you find that the plaintiff has proven that NEITHER Defendant
> McGrory NOR Defendant Magnuson is liable under Section 1983
> for false arrest, you MUST find that the plaintiff has proven his
> state false arrest claim." (Tr. 886)

In the written jury instructions, the court wrote:

> "If you find that the plaintiff did not prove that EITHER defendant
> is liable under Section 1983 for false arrest, nor that any other Nassau
> County police officer is liable for false arrest, then you must find that
> the plaintiff has also not proven his state false arrest claim." (DE, 118, p.26).

Since the oral instruction misled the jury, they may have found liability for the state

false arrest claim based upon this erroneous spoken instruction. The Jury was instructed that they

did not have to address the state false arrest claim if they decided, as they did, that there was no

liability for the federal 1983 false arrest claim. Simply put, we cannot establish which instruction

the jury followed. Since the jury never should have decided the state false arrest claim, the

conflicting instructions further complicates and undermines the written Jury verdict. The ultimate

finding of liability for the state false arrest claim simply cannot stand, particularly when such a

finding resulted in the jury being instructed that such a liability finding mandated a liability finding

for the state battery charge.

In other words, that one mistake caused two further mistakes resulting in the jury erroneously

finding liability for both the State false arrest and the state battery.

## POINT III

### A FINDING OF LIABILITY FOR STATE LAW FALSE ARREST COMPELLED THE JURY TO ALSO FIND DEFENDANTS LIABLE FOR STATE LAW BATTERY

Equally wrong was the verdict finding both officers liable for state law battery. Under

New York law, a battery cause of action requires the plaintiff to prove intentional wrongful

physical contact with another person without consent. *Girden v. Sandals Int'l*, 262 F.3d 195, 203

(2d Cir. 2001); *United National Insurance Co. v. Waterfront New York Realty Corp.*, 994 F.2d

105, 108 (2d Cir. 1993); *Charkhy v. Altman*, 252 A.D.2d 413, 678 N.Y.S.2d 40, 41 (1st Dept.

1998). *See also Yanez v. The City of New York*, 29 F. Supp. 2d 100, 116 (E.D.N.Y. 1998).

In stark contrast, a Section 1983 claim for false arrest or false imprisonment "rest[s] on

the Fourth Amendment right of an individual to be free from unreasonable seizures, including

arrest without probable cause." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "False arrest is

simply false imprisonment accomplished by means of an unlawful arrest." *Jenkins v. City of New

York*, 478 F.3d 76, 88 n.10 (2d Cir. 2007). Such claims are one and the same because "[f]alse arrest

and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S.

384, 388 (2007). The substantive elements of a false arrest claim under Section 1983 are

"substantially the same as [for] a claim for false arrest under New York law." *Id.* To establish a

claim for false arrest and imprisonment, a plaintiff must prove: "(1) the defendant intended to

confine plaintiff; (2) plaintiff was conscious of the confinement; (3) did not consent to such

confinement; and (4) the confinement was not otherwise privileged." *Savino v. City of New York*,

331 F.3d 63, 75 (2d Cir. 2003).

The Court's jury instruction for state law battery read:

> If you find that the plaintiff has proven that he was *falsely arrested*,
> you **must** *find that the plaintiff has also proven his battery claim.*
> (Tr. 886, L. 1) (Emphasis added).

Because the jury wrongly found *state law* false arrest liability in disregard of the Court's

clear jury instruction that a finding of *no federal law* false arrest precluded it from finding liability

for *state law* false arrest, the jury issued a verdict of liability for battery with absolutely no legal

connection between the two completely separate causes of action.

Moreover, since there was no trial testimony that any Nassau County Police Officer

(including Officers McGrory and Magnuson), committed a battery, and the Jury explicitly found there was no use of excessive force and since the finding of battery was wrongly premised on the jury's finding that state law false arrest occurred, despite the Court's clear instruction that a finding of no federal law false arrest claim precluded the jury from finding state law false arrest liability, there should have been no liability finding on either Questions 8 or 9. *A fortiori*, there was no justification for an award of *any* compensatory damages, much less an award of $500,000. Despite this sparse, if not non-existent record, the jury awarded the grossly excessive sum of $500,000. That any compensatory amount was entered was a clear error and manifestly unjust, and even if the Court should determine that the verdict should stand, the amount of damages is totally excessive in light of the trial testimony or, more accurately, the lack thereof.

As a result, this Court should amend or alter the verdict to reflect (1) no liability for the state law false arrest claim and (2) no liability for the state law battery claim.

## POINT IV

### IF THE COURT PERMITS THE VERDICT TO STAND, THE COMPENSATORY DAMAGES ARE EXCESSIVE AND MUST BE REDUCED

"Remittitur is the 'process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial.'" *Nasser Saber v. N.Y. State Dep't of Fin. Servs.*, 2018 U.S. Dist. LEXIS 121811, at *11 (S.D.N.Y. July 20, 2018). "While calculating damages is traditionally the province of the jury, an award can be amended or set aside as excessive in at least two circumstances:(1) where the court can identify an error that caused the jury to include in the verdict a quantifiable amount that should be stricken, and (2) more generally, where the award is "intrinsically excessive" in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error. *Newton*

*v. City of N.Y.*, 171 F. Supp. 3d 156, 159 (S.D.N.Y. 2016). The Court may also reduce the damages award where "the court [] finds the amount of award "shocks the judicial conscience and constitutes a denial of justice." *Guzman v. Jay*, 303 F.R.D. 186, 197 (S.D.N.Y. 2014).

Assuming *arguendo* the Court allows the verdicts to stand, the award must be radically reduced. Based solely on plaintiff's self-serving testimony describing that his wrists briefly hurt because the handcuffs were too tight and he admits the Police loosened the handcuffs at his request, the $500,000 award is intrinsically excessive in the sense of being greater than the amount a reasonable jury could have awarded. The Court should also radically reduce the award since it shocks the judicial conscience and constitutes a denial of justice.

In sum, the total of plaintiff's testimony about his alleged physical damages is as follows:

Q Mr. Semencic, did you incur any physical injuries during the course of your arrest on July 19, 2016?

A Yes, I did. My -- because the handcuffs were on so tight, more than a week later, my wrists were all swollen and my fingers had trouble bending.

Q Did this condition interrupt the activities of your daily life, sir?

A Yeah. I work at a desk with a, with a, with a computer and a keyboard and a pencil and paper and I had a hard time doing these things as a result.

Q Did you seek out any medical treatment for your wrists and fingers after your arrest?

A Yes, I did.

Q Who did you see?

A I saw a Doctor Glenn Teplitz who's a hand surgeon who is on Franklin Avenue, I believe, in Garden City.

Q How many visits did you have with Dr. Teplitz following your arrest?

A A few. I don't remember but three, more.

Q What did Dr. Teplitz do for you, if anything?

A He advised me to seek -- oh, actually, he gave me cortisone
shots in two fingers to help the fingers bend again and then advised
me to get physical therapy.
Q Did you, in fact, go to physical therapy?

A Yes, I did.

Q Where did you receive physical therapy?

A Well, Dr. Teplitz is in NYU Langone in Garden City and
directly across Franklin Avenue. There's a huge parking lot. Walk
through the parking lot and in one of the buildings, that is where
physical therapy was.

Q How long did you receive physical therapy for?

A About two months.

Q During the course of that roughly two-month period, how many
visits do you think you had at your physical therapist?

A I went every week, same day every week. Never missed a week.

Q Did there come a time when you stopped going to physical
therapy?

A Yes.

Q Why did you stop?

A They told me there was nothing more they could do for me and
my insurance had run out anyway.

Q Did Dr. Teplitz ever recommend surgery for your swollen wrists
or stiff fingers?

A No.

Q Are you still treating with Dr. Teplitz right now?

A No.

14

Q Are you currently receiving any medical treatment for your swollen wrists or your stiff fingers?

A For my stiff fingers, here in Arizona, I have a very good doctor who is still giving me cortisone shots.

Q When was the last time you received a cortisone shot?

A Maybe a month ago. (Tr. 329, L.5 - 331, L. 8).

On cross-examination, Mr. Semencic admitted that his request, the police loosened his handcuffs:

Q At that point, were you injured at all?

A At that point, my wrists were swelling up, yeah, from the…from the handcuffs.

Q Did you tell the police your wrists were swelling up?

A I actually did tell…when I was still in the police car, I told one cop who was guarding me in the police car that my writs…these are on way too tight, and he loosened them up a little, but they were still too tight.

Q What about when you got to the police precinct, did you tell them at that point that you were hurt?

A No. (Tr. 385, L. 6-16).

So, at trial in February 2025, plaintiff testified that the extent of the physical damages caused by his arrest *more than six years ago* on September 18, 2018, were "swollen wrists and stiff fingers," sporadic cortisone shots which, as of February 25, 2025, he received "maybe a month ago." It is beyond obvious that the Court must radically reduce the $500,000 award for these minor, fleeting injuries since is intrinsically excessive and, further, that it shocks the judicial conscience and constitutes a denial of justice.

A comparison of reported New York jury verdicts for wrist injuries proves beyond question that the Court must severely reduce the award. For example, in *Robbason v. Dixon,* 2020 Jury Verdicts LEXIS 381079 (N.Y. Sup. Ct. Kings Cnty. 2020 plaintiff Braxton Robbason, 39, was

bicycling on Dekalb Avenue, near its intersection at Steuben Street, in the Clinton Hill section of Brooklyn. His bicycle collided with, or was struck by, a car that was being driven by Walter Dixon Jr. Robbason was propelled onto the roadway, and he suffered injuries of a shoulder and a wrist. Robbason suffered a comminuted fracture of his left, nondominant arm's wrist, and a nondisplaced fracture of his left shoulder's clavicle, which is the collarbone. His left wrist's fracture involved the distal region of the left arm's radius. He underwent open reduction and internal fixation of his left wrist's fracture, and he underwent closed reduction of his left shoulder's fracture. Robbason claimed that his left wrist remains painful, that he suffers residual diminution of the wrist's range of motion, and that the wrist will likely develop residual arthritis. He also claimed that he will likely require surgical fusion of his left wrist. He sought recovery of damages for past and future pain and suffering. The jury awarded Robbason $25,000.

In *Bellinger v. Matt,* 2015 Jury Verdicts LEXIS 3138 (Sup. Ct. Lawrence Cnty. 2015) plaintiff Bellinger sued defendant Matt, alleging that Matt was negligent in the operation of his boat. Bellinger claimed that the collision occurred in a no-wake zone. He claimed that Matt was accelerating at an unsafe speed. Bellinger presented to Claxton-Hepburn Medical Center, in Ogdensburg. After some four weeks had passed, Bellinger presented to a doctor. He claimed that his wrists were painful. Bellinger ultimately claimed that the accident aggravated previously asymptomatic osteoarthritic conditions of his wrists and his left knee. He also claimed that his right wrist developed de Quervain syndrome: inflammation of the sheath of the tendons of a thumb. He underwent surgery, about 12 weeks of physical therapy and the administration of painkilling injections. The surgery addressed his right wrist, and the remaining treatment addressed each wrist.

Bellinger claimed that his wrists remain painful. Bellinger's treating orthopedist submitted a report in which he opined that Bellinger will require fusion of each wrist Bellinger sought recovery of damages for past and future pain and suffering. The jury awarded Bellinger $27,500.

In *Crawford v. NYC Transit Auth.*, 2006 Jury Verdicts LEXIS 43692 (N.Y. Sup. Ct. Queens Cnty. 2006) plaintiff Crawford was boarding a bus in Queens. She claimed that, while she was standing on the bottom step of the bus, her right wrist was struck by the bus's closing front doors. She contended that she was then informed by the bus driver that no more passengers would be allowed onto the bus. She boarded another bus minutes later and continued to her destination. She claimed that she injured her wrist.

Doctors determined that she was suffering a sprain of her right (dominant) wrist. Several weeks later, a neurologist opined that Crawford was suffering a possible partial tear of the fibro-triangular cartilage of the wrist, as well as a hyperextended thumb. Crawford underwent about eight weeks of biweekly physical-therapy sessions. She did not miss any work. Crawford's expert neurologist determined that Crawford suffers a permanent partial disability of her wrist and thumb that is causally related to the accident. Crawford claimed that she suffers ongoing pain and limitations of her right wrist and thumb. She sought recovery of damages for her past and future pain and suffering. The jury awarded Crawford $40,000.

In *Negron v. Lopez,* 2019 Jury Verdicts LEXIS 64325 (N.Y. Sup. Ct. Kings Cnty. 2019) plaintiff Negron, construction worker, was motorcycling on the Bruckner Expressway, in the Bronx. His motorcycle's front end collided with the rear end of a preceding sport utility vehicle that was being driven by defendant Lopez. Negron suffered an injury of a wrist. Negron sued Lopez. Negron was retrieved by an ambulance, and he was transported to Jacobi Medical Center, in the Bronx. A radiological study revealed that he suffered dislocation of his right, dominant arm's

wrist. The injury was deemed a perilunate dislocation, which is dislocation that involves a rupture of one or more ligaments. Negron claimed that the injury also involved a fracture. Negron's injury was addressed via surgery that included open reduction of the dislocation, the implantation of stabilizing pins and a release of the right wrist's median nerve. He was discharged during the ensuing day. He also underwent about 22 weeks of physical therapy. Negron claimed that his injury prevented his performance of about eight months of work. He also claimed that his right wrist remains painful and weakened, that the wrist has not regained full range of motion, that the wrist's impairment prevents its tolerance of rigorous physical activities, and that such activities must be performed by his left, nondominant arm, hand and/or wrist. He also claimed that he previously enjoyed playing baseball, but that his residual effects prevent his resumption of that activity. Negron sought recovery of damages for past and future pain and suffering. The jury awarded Negron $55,000.

## **CONCLUSION**

This Court should alter or amend the verdict to reflect no liability for either state law false arrest or state law battery.  If, however, the Court allows those verdicts to stand – which it should not – then in light of these awards for damages for personal injuries greater in every case cited than the claims of Mr. Semencic, Defendants request that the Court, if it chooses to award any damages, award only a nominal amount for the claims made by plaintiff.


Respectfully Submitted,

John Carnevale
Robert J. Costello
Office of the Nassau County Attorney
1 West Street, Mineola, New York 11501